## REAVES *v.* AINSWORTH, MAJOR GENERAL.

### ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 14.　Argued December 2, 5, 1910.—Decided January 9, 1911.

Under the act of October 1, 1890, c. 1241, 26 Stat. 562, regulating examinations and promotions in the army, the board of examiners may make a provisional order giving the officer a reasonable period for reëxamination and such an order is not final but provisional, and does not deprive the board of jurisdiction to subsequently determine the fitness of officer for duty.

What is due process of law depends upon circumstances. To those in the military or naval service of the United States military law is due process; and the decision of a military tribunal acting within scope of its lawful powers cannot be reviewed or set aside by the courts.

The purpose of the act of October 1, 1890, is to secure efficiency and the only relief from error or injustice in the order of the board is by review of the President. The courts have no power of review.

Courts are not the only instrumentalities of government; they cannot command or regulate the army, and the welfare and safety of the country, through the efficiency of officers of the army, is greater than the value of his commission, or the right of promotion of any officer of the army.

There is a difference between the regular army of the Nation and the militia of a State when not in service of the Nation, and more rigid rules and a higher state of discipline are required in the former than in the latter.

28 App. D. C. 157, affirmed.

THE facts, which involve the validity of an order hon-

orably discharging an officer of the United States Army under the act of October 1, 1890, are stated in the opinion.

*Mr. Alexander S. Bacon* for plaintiff in error.

*Mr. Assistant Attorney General Harr* for defendant in error.

MR. JUSTICE MCKENNA delivered the opinion of the court.

Plaintiff in error filed a petition in the Supreme Court of the District of Columbia for a writ of certiorari to review the proceedings of a board of examination convened under the authority of the act of Congress of October 1, 1890, entitled "An Act to provide for the examination of certain officers of the Army and to regulate promotions therein," (c. 1241, 26 Stat. 562), and to annul an order made by the President discharging plaintiff in error from the army.

The basis of the petition is that by a prior decision of the board he became entitled, by virtue of the act of Congress, to be retired with three-quarters pay for life.

A writ was issued, directed to General Frederick C. Ainsworth, Military Secretary.

He appeared and moved to quash the writ. The motion was granted and the petition dismissed. The order, however, was subsequently vacated, and, by leave of the court, the petition was amended by making William H. Taft, Secretary of War, one of the respondents.

An amended writ was issued, which the respondents moved to supersede upon the following grounds: the writ was granted improvidently, and upon an *ex parte* application; its allowance would be unjust and contrary to public policy; the petition does not set up any right of property, title or interest in the alleged office; Congress has intrusted to the board of examination the decision of

matters properly arising before it and the court has no
jurisdiction by certiorari to examine the proceedings of
the board; the allowance of the writ would embarrass
the operations of the military service of the United States
and the proper administration of the manifold duties of
the War Department, hindering the enforcement of its
discipline and regulations and the discharge of the le-
gally ordained functions of that branch of the govern-
ment; the record sought to be reviewed shows that the
petitioner (plaintiff in error) "is not entitled to the issu-
ance of the writ, as it appears by a duly certified and true
extract from said record." The record was filed with the
motion and will be given hereafter.

The motion to supersede was granted, the order re-
citing "it appearing to the court, without considering
the question of discretion, that the writ of certiorari"
had been "improperly granted." The petition was dis-
missed at the cost of the petitioner, which ruling was af-
firmed by the Court of Appeals.

The Court of Appeals expressed the opinion that the
board of examination was military in character and hav-
ing had jurisdiction of the subject-matter and of the per-
son the courts were without jurisdiction to review its
decision.

By § 3 of the act of October 1, 1890, the President is
authorized to prescribe a system of examination for all
officers below the rank of major, to determine their fit-
ness for promotion, and it is provided "that if any officer
fails to pass a satisfactory examination and is reported
unfit for promotion, the officer next below him in rank,
having passed said examination, shall receive the pro-
motion: *And provided*, That should the officer fail in his
physical examination and be found incapacitated for
service by reason of physical disability contracted in line
of duty he shall be retired with the rank to which his
seniority entitled him to be promoted; but if he should

fail for any other reason he shall be suspended from promotion for one year, when he shall be re-examined, and in case of failure of such re-examination he shall be honorably discharged with one year's pay from the army;  . . . and no act shall be so construed as to limit or restrict the retirement of officers as herein provided for."

This statute constitutes the law of the case. The material facts are these: Plaintiff in error was a second lieutenant of artillery on sick leave at Fort Hamilton on account of neurasthenia, resulting from overwork in the Philippine Islands. On August 16, 1904, he was ordered for promotion before a board of examination, constituted of five members, two of whom were surgeons. The surgeons found him physically fit for duty, but he was, on their recommendation, allowed to return to Fort Hamilton. On October 5, 1904, while still on sick leave, he was again ordered to Fort Monroe before the same board and forced to take a mental examination. He broke down completely and was found deficient. On May 22, 1905, he was again ordered before the board for reëxamination, and appeared before it on the twenty-third. On the twenty-fourth the board made the following order, which was referred to above in connection with the motion to supersede the writ:

"The board is of opinion that 2d Lieut. Winslow H. Reaves, Art'l Corps, is physically incapacitated for service at the present time, but that there is a reasonable hope of his recovery. Lieut. Reaves' present condition is such that it is not possible for him to proceed with the mental examination, without serious interference with his future recovery.

"His disability is due to severe cerebral and cardio-vascular neurasthenia, contracted in line of duty."

Subsequently he was ordered to appear before the same examining board convened by special order of the President, but changed as to a majority of its members. The

board convened at Fort Monroe August 21, 1905, and he appeared before it pursuant to orders. He was found physically fit for duty. He failed, however, in his mental examination, and, we may assume, although it is not directly averred, that in consequence of the report of the board the President made the order above set out, honorably discharging the plaintiff in error from the service of the United States. This order he attacks and urges that of the twenty-fourth of May as the foundation of his rights and contentions. He maintains that the surgeons having reported as therein set out, and their report having been confirmed by a full board of five officers and forwarded to the Secretary of War, it, under the expressed wording of the statute of October 1, 1890, had the finality of an acquittal of a court martial, "and that, by the operation of the statute," plaintiff in error "was thereupon retired and entitled to retired pay during life, instead of being dismissed from the service with one year's pay," and that, as such right became absolute by the report of the surgeons and the action of the board thereon, the subsequent proceedings of the board were without jurisdiction and void, and that they and the President's order deprived him of his property without due process of law.

Plaintiff in error misunderstands the order of May 24. It is not a final order but a provisional one. It was an indulgence to the afflicted officer, giving him a chance for recovery and promotion and assignment to the active list of his profession. And we have no doubt of the power of the board to make it and reserve jurisdiction for further proceedings.

It is next contended that even if the board had jurisdiction its proceedings subsequent to the order of May 24, 1905, were arbitrary and illegal, and that the relief prayed does not involve the "question of interference with the discretion of the board; it is a question of the jurisdic-

tion of the board and of the fact that discretion, if exercised, was abused." On this contention the averments of the petition have a more pertinent bearing than on the first contention. The petition described with much detail and quite vividly his disability. He alleges that for the last two years he has been suffering from an extremely acute case of cerebral neurasthenia, or nervous exhaustion, for which he has been almost continuously under the care of physicians, some of whom are the most famous in the world as specialists for nervous diseases. And, further, that he is to-day in as bad a condition as at any time during the last two years and is wholly unable to exercise mental effort; his memory is at times a blank, and it is, and for two years has been, utterly impossible for him "to study, read or think consecutively, except for a few moments at a time, and 'his' sleep has not averaged more than about two and one-half hours per day." This was his condition, it is alleged, when he was ordered before the first board. The allegations are supported by an affidavit of Dr. Weir Mitchell and Dr. John K. Mitchell. The affidavit, which was submitted to the first board, illustrated his condition and its effects in various ways and declared that from the experience and knowledge obtained from actual attendance upon him he was not "competent to undergo a mental examination or to do any military duty."

This condition is further set forth in the petition, and the affidavit which accompanied it, with circumstances of emphasis, and there is an intimation that the final action of the board was contrived. The details we may omit. The important facts which are alleged and which, as it is contended, give character to the action of the board as illegal and arbitrary are the following: The board had before it papers from the War Department and his counsel made a series of motions for permission to examine them and to inspect the other evidence, which included

documents of all kinds, reports of surgeons and the report of the surgeons made to the board May 23, 1905.

A motion was also made to strike out the report of the surgeons, on the ground that the report of the examining board of May 24, 1905, was final, and plaintiff in error's retirement was mandatory under said report and the act of Congress of October 1, 1890.

The motions were all denied except the request to produce witnesses. At the request of the board he presented the names of about thirty witnesses who were physicians and had had him under observation for different periods of time, and all of whom could swear to facts, exact symptoms of his malady, and besides could give expert evidence as to his condition while under observation. The names of the witnesses and the facts were given. It was offered to be shown that the reports of the surgeon who had charge of a hospital at Fort McPherson, Georgia, to which plaintiff had been sent, that he was competent to do duty, were not based on facts or the reports of the attendants, "but were prepared negligently, ignorantly, wickedly and corruptly." And an offer was made to produce the attendants with their official reports.

The board refused to call in witnesses, on the ground that the doctors named had already filed certificates, and that the laymen were not expert witnesses. Plaintiff in error was not allowed to call witnesses, nor to inspect exhibits presented to the board, nor to cross-examine the surgeons on their report. All testimony, documentary or otherwise, was taken in secret.

The board went into executive session and formally reported plaintiff in error to be without physical disqualification and competent to take the examination and to do the duty of a first lieutenant of artillery. He was thereupon ordered to take such examination, and attempted to take the same, until prevented by spells of weeping and other marked symptoms of neurasthenia.

Thereupon the post surgeon made a certificate as to his condition and put him on the sick report, and on the following day the surgeons of the board were sent to Fort Monroe and superseded the post surgeon, and plaintiff in error was forced to go through "the farcical form of an examination under the personal supervision of the board surgeons, turning in practically blank examination papers, petitioner's mind being almost a blank."

The prayer is for a writ of certiorari to bring up all of the proceedings which we have detailed, that they may be reviewed and that the following order discharging him from the army be annulled. The order is annexed to the petition as an exhibit and is as follows:

"4. By direction of the President, 2d Lieutenant Wil-son Hart Reaves, Artillery Corps, is honorably discharged from the services of the United States, under the provision of the Act of Congress approved October 1, 1890, to take effect September 14, 1905 (1052959, M. S. O.).

"By order of the Acting Secretary of War.

"J. C. Bates,
"*Major General, Acting Chief of Staff.*
"Official: F. C. Ainsworth,
"*The Military Secretary.*"

And it is further prayed that petitioner be put upon the retired list under the act of October 1, 1890, and the findings of the board of May 24, 1905, and that the proceedings of the board and of the Acting Secretary of War subsequent to that date be found to be void and without effect. And such further relief is prayed as may be just.

The petition is verified and is accompanied by an affidavit of plaintiff in error's counsel, corroborating with some detail its statements of the mental and physical condition of plaintiff in error.

It will be seen that the report of the board of May 24,

1905, is made by the petition, and urged in the argument, as the foundation of the rights of plaintiff in error. It is argued that his commission in the army constituted property of which to be retired from the army, with pay for life, was a valuable attribute, and of which he could not be deprived without due process of law. Such process, he urges, "consists of two independent parts, both of which must be lawful; one, the proceeding before the board of examination and its report, which conforms in all respects to a 'decision' by a judge, which is the foundation of a judgment; second, the confirmation of that report by the President." These being filed, it is further argued all subsequent proceedings affecting them, if without jurisdictional support, as it is contended they are, are void and may be declared so, and plaintiff in error's right to be promoted and put upon the retired list adjudged. But the contention and argument are without foundation, as we have seen, and the case presented by the petition does not exist. It is not necessary therefore to review the able argument of counsel. It is based entirely on the unsound assumption which we have pointed out. Besides, what is due process of law must be determined by circumstances. To those in the military or naval service of the United States the military law is due process. The decision, therefore, of a military tribunal acting within the scope of its lawful powers cannot be reviewed or set aside by the courts. *Johnson* v. *Sayre*, 158 U. S. 109. See also *Mullan* v. *United States*, 212 U. S. 516.

It is contended, however, that the board of examination did not observe the procedure required by law, and that they are bound, as retiring boards are bound under § 1248 of the Revised Statutes, "to inquire into and determine the facts touching the nature and occasion of the disability of an officer, . . . and shall have such powers of a court-martial and of a court of inquiry, as may be necessary for that purpose."

But the act of October 1, 1890, has a different purpose from the retirement of an officer from service. Its purpose is to secure efficiency in those who are to be active in service, and physical capacity, of course, is as necessary as mental capacity, but no fixed procedure is provided by the statute to ascertain either, but by very comprehensive words power is conferred upon the President to "prescribe a system of examination of all officers of the army, to be conducted at special times anterior to the acquiring of the right of promotion as may be best for the interests of the service." This power is exercised through special orders creating examining boards which define their membership and duties. For officers of artillery the board shall consist of five members, two of whom shall be medical officers, and a recorder, all of whom take an oath to act and report impartially. The medical officers are required to make the necessary physical examination of all officers, reporting their opinion to the board by which "all questions relating to the physical condition of an officer shall be determined." The orders directed that "if anything should arise during the examination regarding the introduction of evidence, the inquiry shall proceed upon written interrogatories as far as possible, the board determining to whom questions shall be forwarded." If it becomes necessary to take oral testimony the fact must be reported to the War Department for the necessary orders in regard to witnesses summoned from a distance.

The record, where an officer is found physically disqualified, must be authenticated by all members of the board and the recorder. If the disability be the result of an incident of the service, and the proceedings of the board be approved by the President, the officer "shall be regarded as physically unfit for promotion within the meaning of section 3 of the act of October 1, 1890, and shall be retired with the rank to which his seniority en-

titles him whenever a vacancy occurs that otherwise would result in his promotion on the active list."

If it be disputable whether these provisions guarantee to an officer "the safeguards of a trial in court," it is certain that the decision is not final with the board but must be reported with the proceedings to the President, and may be approved or disapproved by him. This is the only relief from the errors or the injustice that may be done by the board which is provided. The courts have no power to review. The courts are not the only instrumentalities of government. They cannot command or regulate the army. To be promoted or to be retired may be the right of an officer, the value to him of his commission, but greater even than that is the welfare of the country, and, it may be, even its safety, through the efficiency of the army. And this was the motive of the act of October 1, 1890, and naturally its accomplishment was intrusted to the President. He executed the trust by constituting examining boards, defining their duty and reserving to himself the ultimate review of their proceedings and decision. This is the protection which the act of Congress gives to the rights conferred by it. If it had been the intention of Congress to give to an officer the right to raise issues and controversies with the board upon the elements, physical and mental, of his qualifications for promotion and carry them over the head of the President to the courts, and there litigated, it may be, through a course of years, upon the assertion of error or injustice in the board's rulings or decisions, such intention would have been explicitly declared. The embarrassment of such a right to the service, indeed the detriment of it, may be imagined.

It is, however, contended that *People ex rel. Smith* v. *Hoffman,* 166 N. Y. 462, sustains the right of review. The case does not support the contention. The decision was based on the statutes of the State, which made, it was

decided, the military board, whose action was reviewed, a judicial tribunal, and its decision subject to be reviewed by certiorari. And, replying to the argument against the existence of the power of the courts to review the determination of a military tribunal and the cases from the Federal courts, adduced to support the argument, the court said, "there is a wide difference between the regular army of the Nation and the militia of a State when not in the service of the Nation," and that "more rigid rules and a higher state of discipline are required in the one case than in the other."

*Judgment affirmed.*