In re MEADER, Lt. Commander, U. S. N. R.

Misc. No. 981.

District Court, E. D. New York.

April 26, 1945.

McCarthy & McGrath, of New York City (Herman J. McCarthy, of New York City, of counsel), for petitioner.

T. Vincent Quinn, U. S. Atty., of Brooklyn, N. Y. (Mario Pittoni and Albert V. De Meo, Asst. U. S. Attys., both of Brooklyn, N. Y., of counsel; Robert H. Alcorn, Commander, U.S.N.R., Legal Officer, 3rd Naval Dist., of New Haven, Conn., and Harold E. Magnuson, Lieutenant, U.S. N.R., Assistant to Legal Officer, of Boston, Mass., on the brief), for respondent.

MOSCOWITZ, District Judge.

This is an application for an order restraining the Commandant of the Third Naval District and any of his staff or as-

sistants, the Collector of Customs of the Port of New York, the United States Attorney for this district and his associates, at any trial, hearing or proceeding against petitioner, from using or introducing or referring to any evidence directly or indirectly obtained as a result of what is alleged to have been an unlawful search of the petitioner's home at 338 Burns Street, Forest Hills, Long Island, and to suppress all matter alleged to have been illegally seized upon such unlawful search.

The petitioner is a Lieutenant Commander in the United States Naval Reserve, presently a prisoner at large under technical arrest awaiting disciplinary action by the Commandant of the Third Naval District. It appears from the papers submitted upon the application that petitioner is suspected of misconduct involving theft, embezzlement or misappropriation of vast quantities of property belonging to the United States, British and French governments, of attempts to evade United States Customs regulations, of violation of United States Navy directives relating to the retention and shipment of captured enemy equipment, of improper taking and shipping of live ammunition and explosives endangering naval vessels and the lives of naval personnel, and of other offenses of a serious nature.

In an affidavit in opposition to the order to show cause by which this application was initiated, the United States Attorney states that "there is no proceeding or any matter of any kind pending or contemplated before this, the United States District Court, Eastern District of New York, and the property is not in the possession of any officer of this Court."

■ To pose the question here involved seems to furnish the answer. No proceeding of any kind is pending in this court and apparently none is even contemplated. A member of the United States Navy is being investigated in respect to his United States naval duties and obligations, which may involve proceedings before bodies known as a Board of Investigation, a Court of Inquiry or a United States Naval Court-Martial. These are agencies of the executive branch of the government and cannot, by the widest stretch of the imagination, be considered parts of the judicial system. They have been provided for by Congressional enactment under Article I, Section 8 of the Constitution which authorizes the Congress to "make Rules for the Govern-

ment and Regulation of the land and naval forces." Where the accused is properly under Navy supervision, the civil courts have no power or jurisdiction to restrain or to interfere with the normal processes of the administration of naval justice and discipline. Dynes v. Hoover, 1858, 20 How. 65, 61 U.S. 65, 15 L.Ed. 838; Reaves v. Ainsworth, 1911, 219 U.S. 296, 31 S.Ct. 230, 55 L.Ed. 225; United States ex rel. Wessels v. McDonald, D.C.N.Y., 1920, 265 F. 754; Winthrop, Military Law and Precedents, 2nd Ed. (1920), p. 49.

■ Since the application is apparently designed to restrain the Navy Court-Martial and the preliminary inquiries and investigation, the application is denied.

■ Where it has been held that a summary proceeding for the return of illegally seized property may be entertained prior to the institution of a criminal prosecution, jurisdiction was based on the property being in the custody of an officer of the court in which the summary proceeding was brought. Weinstein v. Attorney General of the United States, 2 Cir., 1921, 271 F. 673; In re Behrens, 2 Cir., 1930, 39 F.2d 561; Applybe v. United States, 9 Cir., 1929, 32 F.2d 873; American Dealers Service v. Goldman, D.C.N.Y., 1943, 49 F.Supp. 933, affirmed 2 Cir., 135 F.2d 398. This is not a proceeding for the return of the property and the United States Attorney has averred by affidavit that the property is not in his possession.

■ It appears that the claimed constitutional rights of the petitioner will be adequately protected in any event within the naval procedure itself. No rule on the admissibility before a Court-Martial of evidence procured by an illegal search and seizure has been drawn to the court's attention as being specifically set forth in Chapter III of Naval Courts and Boards (1937), which regulates the conduct of the proceeding. But Section 146 thereof provides that: "If a question of evidence which cannot be determined by a reference to the above rules (those specifically set forth) confronts a court it should then look to the rules of evidence applied by the federal court and follow them if applicable." Pursuant to this and equivalent predecessor provisions, General Courts-Martial have followed the federal rule on search and seizure and have held that evidence illegally procured may not be admitted on a court-martial trial and a finding

of guilt where such evidence has been admitted will be reversed. See C.M.O. 11—1929, p. 11 and C.M.O. 3—1943, p. 47.*

Settle order on notice.

**BRENTS v. STONE et al., Justices of Supreme Court of Illinois.**

**No. 463–D.**

District Court, E. D. Illinois.

April 27, 1945.

---

* These Court-Martial Orders were furnished to the Court for use upon this application from the Legal Office files of the United States Navy and since they are not generally available, the pertinent parts of the cited decisions are herewith set forth.

C.M.O. 11—1929, p. 11. "Accused was convicted of the charge 'Scandalous conduct tending to the destruction of good morals.' (7 specs.). The prosecution on all specifications except 4 and 7 was based upon certain photographs obtained from the locker of accused in the Y.M.C.A., San Diego, by a chief Boatswain's mate, U. S. Navy, acting as special investigator, who visited the Y.M.C.A. and searched the said locker in the absence of the accused and without his permission. In making this search, he acted without a search warrant. Before being arraigned, accused through his counsel made a demand for the return of his property and during the progress of the trial made seasonable objection to its reception in evidence.

"While in many State jurisdictions evidence illegally obtained may nevertheless be used by the State in a resulting criminal prosecution (35 Cyc., sec. 1271, and Underhill on Criminal Evidence, 3d ed., sec. 751, and cases cited thereunder), nevertheless the invariable rule in the Federal Courts is that such evidence, if seasonable objection is made thereto, may not be received in evidence against the accused and also no information obtained by the Government from such illegal evidence may be utilized. The interpretation of the law as contained in the cases cited is based upon the fourth and fifth amendments to the Constitution, the limitations of which are applicable to the Federal Government and its agencies. (Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746; Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319, 24 A.L.R. 1426; Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, L.R.A.1915B, 834, Ann. Cas.1915C, 1177; Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L. Ed. 947; Amos v. United States, 255 U. S. 313, 41 S.Ct. 266, 65 L.Ed. 654; Holmes v. United States, 4 Cir., 275 F. 49; Flagg v. United States, 2 Cir., 233 F. 481; Ganci v. United States, 2 Cir., 287 F. 60; Gambino v. United States, 275 U. S. 310, 48 S.Ct. 137, 72 L.Ed. 293, 52 A. L.R. 1381; Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145, 51 A. L.R. 409; United States v. Bush, D.C., 269 F. 455; Underhill on Criminal Evidence, 3d ed., sec. 749, and case cited in note thereunder.) Inasmuch as the subject prosecution was one instituted by one of the agencies of the Federal Govern-

ment, it follows that the law as interpreted by the highest courts of the Federal Government must be followed. To this same effect is section 320, Naval Courts and Boards, which speaks of the rules of evidence to be observed by courts martial. (See also G.C.M. Order No. 36 of the War Department dated Aug. 30, 1924, in accord.)

"In view of the fact that the law is so clear on this point, as set out above, the Navy Department was compelled to disapprove the proceedings and findings on these specifications (1, 2, 3, 5, 6), although an examination of the illegally seized photographs conclusively established the guilt of the accused."

C.M.O. 3—1943, p. 47. "The single specification under Charge I alleged that the accused wrote a letter addressed to another member of the armed forces" which "contained contemptuous and disrespectful words against the superior officer in command of the accused and violated the respect due from the accused to the superior officer.

"Prior to trial the accused requested the return to his possession of the letter which formed the basis of the above specification. At the trial he filed a motion to suppress, a procedure sanctioned and followed in the Federal courts. This motion was overruled. The accused then objected to the specification on the grounds that the offense specified, if any, was supported solely by a letter obtained by an illegal search and seizure. He also objected to the introduction of the letter into evidence on the same grounds. The evidence adduced in support of this specification, standing uncontested, showed that the ship's censor found certain letters purportedly written by the accused on his desk. He examined one V-mail letter which contained the statement 'I stayed at the R—— H—— Hotel last night.' The censor considered this statement to be a violation of the censorship regulations, and took the several letters of the accused to the commanding officer who opened them, including the one which was the subject of the specification of the first charge. The letter was, at the time, in a sealed envelope bearing a U. S. postage stamp and had been passed by the censor without examination.

" * * * Under these circumstances, the accused was entitled to have his letter returned to him on demand, and the court therefore erred in overruling his counsel's motion that the letter be suppressed as evidence and returned to the custody of the accused. Consequently, the accused stood convicted of Charge I on evidence obtained by the Government through illegal search and seizure. Accordingly, the findings on Charge I and the specification thereunder were set aside."