**First Lieutenant Joseph A. MORBETO, Jr., United States Army Reserve, Plaintiff,**

**v.**

**UNITED STATES of America; Honorable Clark Clifford, Secretary of Defense; Honorable Stanley R. Resor, Secretary of the Army; Lt. Colonel H. W. Wheeler, Chief Officer, Active Duty Control Division, Office of Personnel Operations, Fort Benjamin Harrison, Defendants.**

**No. 68–1075.**

United States District Court
C. D. California.

Oct. 18, 1968.

Murray Richtel, and Richtel & Nagin, Beverly Hills, Cal., for plaintiff.

Wm. Matthew Byrne, Jr., U. S. Atty., Frederick M. Brosio, Jr., Asst. U. S. Atty., Chief of Civil Div., and James D. Murray and David H. Anderson, Asst. U. S. Attys., Los Angeles, Cal., for defendants.

## DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW and ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

HAUK, District Judge.

Plaintiff has filed a complaint seeking a permanent injunction prohibiting defendants, during the pendency of this litigation from enforcing orders calling plaintiff to active duty, and from issu-

ing any orders which would have the effect of removing plaintiff from the jurisdiction of this Court or instituting disciplinary proceedings against plaintiff for failure to obey the active duty orders he has received. In addition, plaintiff seeks a declaratory judgment, and the issuance of a writ of mandamus compelling defendants to perform duties allegedly owed to plaintiff. Finally, plaintiff moved for a temporary restraining order and a preliminary injunction staying and suspending the orders calling plaintiff to active duty.

The Honorable Albert L. Stephens, Jr., United States District Judge, denied the temporary restraining order, plaintiff's motion for a preliminary injunction was placed on our calendar for hearing and it is now the subject matter of this decision. Defendants subsequently filed their answer and a memorandum in opposition to the motion for a preliminary injunction.

The uncontested facts as set forth in the complaint, the answer and the certified copy of plaintiff's military record are relatively simple and are set forth chronologically below.

Jurisdiction of this Court has been invoked pursuant to Title 28, United States Code, Sections 1346(a)(2)[1] and 1402(a)(1),(2).[2]

1. 28 U.S.C. § 1346(a)(2):
"§ 1346. United States as defendant
(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:
\* \* \* \* \*
(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

2. 28 U.S.C. § 1402(a)(1), (2):
§ 1402. United States as defendant
(a) Any civil action against the United States under subsection (a) of section 1346 of this title may be prosecuted only:

## THE FACTS

The plaintiff was born in Philipsburg, Pennsylvania, on April 7, 1941, and is presently 27 years of age. He enrolled as an undergraduate student in the University of California at Santa Barbara in September of 1960 and has remained at the University for the past eight years. (Plaintiff's Military Record, p. 73, hereinafter referred to as "Record").

On September 17, 1962, plaintiff enrolled in advanced training for the Army Reserve Officers' Training Corps at the University, and at that time he acknowledged in writing his willingness to incur a military obligation of six years after receipt of his commission, including two years of active duty. (Record, p. 74).

On February 5, 1964, plaintiff requested his first delay in call to active duty "for the purpose of attending graduate school" in physical education. (Record, p. 63). This request was approved by the Army, pending verification of his enrollment in graduate school. (Record, p. 64).

On November 9, 1964, plaintiff was accepted for graduate school at the University, for the purpose of obtaining a master's degree in physical education. (Record, p. 60). He was commissioned a Second Lieutenant in the Army Reserve effective January 27, 1965, the

(1) Except as provided in paragraph (2), in the judicial district where the plaintiff resides;
(2) In the case of a civil action by a corporation under paragraph (1) of subsection (a) of section 1346, in the judicial district in which is located the principal place of business or principal office or agency of the corporation; or if it has no principal place of business or principal office or agency in any judicial district (A) in the judicial district in which is located the office to which was made the return of the tax in respect of which the claim is made, or (B) if no return was made, in the judicial district in which lies the District of Columbia. Notwithstanding the foregoing provisions of this paragraph a district court, for the convenience of the parties and witnesses, in the interest of justice, may transfer any such action to any other district or division.

date of his graduation from undergraduate studies. (Record, p. 71).

On February 19, 1965, plaintiff made a formal application for delay in active duty for educational purposes for two years, stating in writing that he agreed to serve on active duty for the required period of time after expiration of the period of delay. (Record, pp. 59–59a). A delay until January 31, 1966 was granted by the Army, and he was notified that:

> "Maximum period for educational delay is 48 months from the date of appointment. Only in unusual situations will requests for exception to this policy be permitted." (Record, p. 55).

On November 5, 1965, plaintiff applied for an additional delay in active duty for educational purposes, this time until July, 1967. (Record, pp. 51–51a). In response to a request for further substantiation, plaintiff replied that the additional delay was necessitated by his inability to complete the required units of study in the time originally granted, plus the additional time required in practice teaching to complete teaching certification, and the additional time required to work as a teaching assistant for financial reasons. (Record, p. 49). A delay was granted until January 31, 1967. (Record, pp. 46–46a).

On May 16, 1966, plaintiff again requested a delay in active duty until June of 1967 because of problems encountered in receiving his master's degree. His request contained the statement:

> "May I also request that I be ordered to active duty as soon after 1 June of 1967 as you wish to call me." (Record, p. 45).

Plaintiff made a formal application for this delay on July 25, 1966 (Record, pp. 43–43a), and the Army granted an additional delay until June 30, 1967. (Record, p. 42).

On March 14, 1967, plaintiff was notified that he would be ordered to active duty to fulfill his obligation on July 21, 1967 for assignment to the Adjutant General Offices Basic Course at Fort Benjamin Harrison, Indiana. (Record, p. 39). It was after this, and on May 2, 1967, that plaintiff for the first time expressed his desire to resign his commission in a letter to the Department of the Army which stated in part:

> " * * * for approximately the past two years I have been very worried and depressed * * *. *The real reason for my recent worry and depression has been the thought of having to go into the Army.* In the two and one half years since I was commissioned out of R.O.T.C. my personal views and convictions have drastically changed. I have become much more sensitive and aware of what is happening in the world today. Some people say that I am too idealistic but I am proud of my beliefs and am convinced that they are right. I firmly believe that no problem or misunderstanding can be solved violently. *You might call me a pacifist or a conscientious objector, if you like.*" (Record, pp. 37–37a, emphasis added).

On June 2, 1967, in response to a request from the Army, he filed a formal application for discharge from the military for reasons of conscientious objection, under Army Regulation 134–25. (Record, pp. 26–26f). At or about this time plaintiff also submitted several letters of reference, as required by the Regulation. Col. George C. Dewey, Professor of Military Science at the University, wrote:

> "We had quite a long discussion concerning pacifism, non-violence, the Vietnam War and the like. I have no doubt of Mr. Morbeto's sincerity, based on that one discussion. He told me that his pacifistic feelings go back quite a while, and that he selected the Adjutant General's Corps because its members do not participate in actual combat operations." (Record, p. 35e).

Plaintiff's mother, Mrs. Joseph A. Morbeto, Sr., stated in her letter, "I know also that he is opposed to wars, fighting and killing." (Record, p. 35d). Plaintiff's sister, Mrs. Mary Ann Reyes, stated, "He is a great guy, and has always been opposed to fighting and kill-

ing." (Record, p. 35c). In his letter, Walter H. Capps, Assistant Professor of Religious Studies at the University, wrote:

> "With assurance I can testify that his interest in religion is not casual * * *. While perhaps not 'traditional' (in certain commonly accepted definitions of the term), his religious convictions are certainly not out of keeping with a dominant strain in the Judaeo-Christian tradition." (Record, p. 35b).

A letter of reference from Jean Hodgkins, Professor of Physical Education at the University, stated in part:

> " * * * I am convinced of his deep concern for the troubles of mankind * * *. I feel certain that he is sincere in his belief that war is not the answer to any problem and that he feels morally obligated to refuse military service as means of supporting this belief." (Record, p. 30b).

A friend of plaintiff's, Patricia Lancaster, wrote:

> " * * * his convictions ['about the war in Vietnam, or more generally, the military'] are a real and serious thing to him, and that his present stand against war and the whole system of the military has evolved after much study and serious thought. This conviction stems from his firm and sincere belief in the concept of non-violence * * *." (Record, p. 30a).

On July 17, 1967, plaintiff's orders to report for active duty were cancelled, pending a decision on his request for discharge. (Record, p. 32.) Thereupon and in accordance with Army Regulation 135–25, he was directed to report for a psychiatric and chaplain examination on August 27, 1967. (Record, p. 26L). The psychiatric examination was conducted by Lt. Col. Kengo Tanaka, who stated in his report of the interview:

> "It is believed that he is sincere about what he says but what he says does not necessarily stem out of a religious conviction. Either he does not appear to be such an ardent supporter of what he learned from religion or he must be misunderstanding what religion teaches. His notion of non-violence principals is unrealistic * * *. It is interpreted that his motivation for the action is fear of going to war, engaging in combat. His explanation to justify his position of conscientious objection is an elaborate rationalization to deny his conflict." (Record, pp. 26m–26n).

The chaplain, Lt. Col. Joseph A. Pekarcik, reported after his interview with plaintiff:

> "His ideas on non-violence in reality is based on his own personal conviction. Any religion which he has been investigating in the past few years does not object to service in the Armed Forces * * *. The only conclusion I can draw from my personal interview with Lt. Morbeto is that his stand on conscientious objection stems from a personal conviction * * *. I cannot find that his personal convictions of conscientious objection is based upon a religious conviction." (Record, pp. 26i–26j).

On March 26, 1968, the Army denied plaintiff's application for discharge as a conscientious objector. One of the factors in this decision was information to the effect that he would not have been classified as a conscientious objector if he had been considered for induction under the Selective Service laws. (Record, p. 21). And he was notified of this decision on April 11, 1968. (Record, p. 20).

On April 14, 1968, plaintiff asked the Army to reconsider his application for discharge. (Record, p. 17). But on May 1, 1968, he was notified that he would be ordered to active duty on July 12, 1968 for assignment to the Adjutant General Offices Basic Course at Fort Benjamin Harrison, Indiana. (Record, p. 18). In preparation for this active duty he was advanced to First Lieutenant, effective January 26, 1968. (Record, p. 70). And on May 14, 1968, he was notified that his request to reconsider his application had been denied and that the decision would not be re-

considered unless material evidence or documentation not previously submitted were supplied. (Record, p. 14). He again requested a reconsideration on May 19, 1968. (Record, p. 13) and was again notified on May 23, 1968 that a discharge would not be granted. (Record, p. 12).

On July 10, 1968, plaintiff was informed by telephone, and this was confirmed by telegram, that his active duty reporting date had been postponed to September 6, 1968 because orders had not yet been issued for him and insufficient time was available to arrange his personnel affairs in order to report on July 12, 1968. (Record, pp. 3–4).

Based on these undisputed facts, plaintiff has now moved for a preliminary injunction staying and suspending the orders calling him to active military duty on the grounds that such a stay is necessary to prevent irreparable injury to him and to insure that the Court will not be deprived of jurisdiction during the pendency of this litigation.

The Court has examined the record before it, which includes, among other things, the complaint, the answer and a certified copy of plaintiff's military record. The matter has been extensively argued, in writing and orally.

Now having heard the arguments and having examined all the files, documents and records herein, the cause having been submitted for decision, and the Court being fully advised in the premises, the Court renders its decision.

## DECISION

The scope of judicial review in this case is limited to the narrow issues of whether there is shown to be a denial of basic procedural fairness or whether the conclusion of responsible authorities is unsupported by any basis in fact.

Plaintiff apparently does not contest the authority of the Army to process and rule on his application for discharge. As our brother on the Central District Bench, Judge E. Avery Crary, held in Minasian v. Engle, 292 F.Supp. 543 (C.D. Cal. May 12, 1967), aff'd, 401 F.2d 137 (9th Cir. August 6, 1968):

"It is not for the court to weigh the evidence to determine whether the action of the Navy Department was justified. Its decision, as in the case of a Selective Service board, when made in conformity with the regulations is final even though erroneous. Estep v. United States [327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946)]."

Therefore, plaintiff's certified military record, which contains the evidence upon which Army authorities reached their decision to deny application of his contended conscientious objection, and the applicable Department of Defense Directive 1300.6 (DOD 1300.6) as well as Army Regulation no. 135–25 (AR No. 135–25) comprise the only evidence upon which the Court should base its review.

*This Court lacks jurisdiction over the defendant United States of America since this is an unconsented-to suit.*

It has long been recognized that the United States of America is not subject to suit in either a federal or state court unless Congress has waived sovereign immunity with respect to the activity or agency involved. Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); Blackmar v. Guerre, 342 U.S. 512, 72 S.Ct. 410, 96 L.Ed. 534 (1952); Reid v. United States, 211 U.S. 529, 29 S.Ct. 171, 53 L.Ed. 313 (1909).

Since Congress has not waived this immunity with respect to the type of relief sought in the complaint on file herein, this Court lacks jurisdiction over the defendant United States of America.

*Plaintiff has failed to allege the necessary jurisdictional requirements for an action to be brought in this Court.*

Under 28 U.S.C. § 1331(a) the district courts have original jurisdiction of all civil actions " * * * wherein the amount in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises un-

der the Constitution, laws or treaties of the United States."

Plaintiff has not alleged any monetary damages and has instead alleged jurisdiction on the basis of 28 U.S.C. § 1346 (a) (2). However, § 1346(a) (2) refers to concurrent jurisdiction with the Court of Claims of "Any other civil action or claim against the *United States,* not exceeding $10,000 in amount, founded either upon the Constitution or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

As stated hereinabove, this Court lacks jurisdiction over the defendant United States of America because this is an unconsented-to suit. In addition, the language of § 1346(a) (2) implies the necessity of some actual amount in controversy since it speaks of concurrent jurisdiction with the Court of Claims.

Since 28 U.S.C. § 1402(a) (1) relates to venue not jurisdiction, plaintiff may not base his action upon that section. Sections 2201 and 2202 of 28 U.S.C. relate to declaratory judgments and do not provide an independent basis for federal jurisdiction. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); Schilling v. Rogers, 363 U.S. 666, 80 S.Ct. 1288, 4 L.Ed.2d 1478 (1960).

Under 28 U.S.C. § 1361 mandamus is authorized where the Court's assistance is sought to compel an officer or employee of the United States or any agency to perform a legal duty owed to plaintiff. As we now discuss, this Court lacks jurisdiction to compel the military to perform an alleged duty where that "duty" either does not exist or is not a legally enforceable duty but is actually a matter of discretion.

*This Court lacks jurisdiction to enjoin military authorities from issuing discretionary orders pertaining to matters within the military jurisdiction.*

■ The basic law is clear that a Federal District Court lacks jurisdiction to enjoin military authorities from issuing orders pertaining to matters within the military jurisdiction. This is set forth in Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953):

"But Judges are not given the task of running the Army. The responsibility for setting up channels through which such grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. * * * Orderly government requires that the Judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to interfere in judicial matters." 345 U.S. at 93–94, 73 S.Ct. at 540.

It is also stated in Reaves v. Ainsworth, 219 U.S. 296, 31 S.Ct. 230, 55 L.Ed. 225 (1911):

"The courts are not the only instrumentalities of government. They cannot command or regulate the Army." 219 U.S. at 306, 31 S.Ct. at 234.

Luftig v. McNamara, 126 U.S.App. D.C. 4, 373 F.2d 664, cert. denied 387 U.S. 945, 87 S.Ct. 2078, 18 L.Ed.2d 1332 (1967), involved a situation in which the plaintiff sought a declaratory judgment and sought to enjoin military officials from sending him to Vietnam. In denying the relief sought, the Court stated:

"It is difficult to think of an area less suited to judicial action than that into which Appellant would have us intrude. The fundamental division of authority and power established by the Constitution precludes judges from overseeing the conduct of foreign policy or the use and disposition of military powers; these matters are plainly the exclusive province of Congress and the Executive. * * *" 373 F.2d at 665–666.

In Noyd v. McNamara, 378 F.2d 538 (10th Cir.), cert. denied, 389 U.S. 1022, 88 S.Ct. 593, 19 L.Ed.2d 667 (1967), (also reported in 267 F.Supp. 701), Captain Noyd, an Air Force officer with

eleven years' service, sought habeas corpus relief because the Air Force had refused to recognize his asserted status as a conscientious objector and to assign him accordingly, or in the alternative, to accept his resignation. The District Court relied upon Chavez v. Fergusson, 266 F.Supp. 879 (N.D.Cal.1967) which declared

> "The power to discharge enlisted members of the Army before their term of service expires is expressly granted to the Secretary of the Army in Section 3811(b) of Title 10, U.S.C. Congress, by this delegation of authority, has recognized that the subject of discharge is a legitimate Army matter. For this reason it matters little whether plaintiff's complaint is treated as a request for a declaratory judgment or as a petition for habeas corpus. The same principle requiring judicial abstinence is apposite in both types of actions." (p. 881)

Although some Courts have allowed inductees to challenge a wrongful induction by way of habeas corpus, the Courts draw the distinction between such inductees and persons who have voluntarily entered into military service. The person who challenges the validity of his induction has never submitted himself to the military tribunals, whereas the enlistee or commissioned officer has subjected himself to the military establishment and is thereby required to exhaust his remedies within the military before coming to Court. Noyd v. McNamara, supra. As stated in Brown v. McNamara, 387 F.2d 150 (3rd Cir. 1967), cert. denied, Brown v. Clifford, 390 U.S. 1005, 88 S.Ct. 1244, 20 L.Ed.2d 105 (1968):

> " * * * It is perfectly rational and consonant with constitutional concerns, including the separation of powers to regard voluntarily enlisted servicemen as a distinct class from inducted civilians or servicemen in general discharged to civilian life." (p. 152)

The reasoning behind judicial reluctance to exercise jurisdiction in cases of enlistees claiming conscientious objector status is well stated in the District Court opinion in Brown v. McNamara:

> "We do not wish to foster a situation which results in having part of what is supposed to be our active force immobilized and entangled in litigation. How can the military efficiently devote its abilities and personnel to training a military unit if it cannot rely on those who have been properly inducted and are subject to its control? It is one thing for the courts to be in the middle of the thicket on the issue of pre-induction classification and on the issue of whether the proper form of discharge has been granted. Such litigation at the beginning and end of the military term of service is not nearly as disruptive to the function of the armed services as that which threatens the very utilization of the manpower which has been assembled for active service." (Emphasis added) (263 F.Supp. 686 at 692).

*This Court lacks jurisdiction over the subject matter of this action since plaintiff has failed to exhaust his administrative remedies.*

Plaintiff alleges that he has exhausted all of his administrative remedies as a necessary prerequisite to this Court acquiring jurisdiction of the subject matter. However, since plaintiff has failed to allege that any attempt was made to apply to the Board for Correction of Military Records pursuant to 10 U.S.C. § 1552, he has not exhausted his "military" administrative remedies prior to bringing this action.

Resort to this Court for a temporary and permanent injunction is premature where the plaintiff has not exhausted his available administrative remedies. See Tuggle v. Brown, 362 F.2d 801 (5th Cir. 1966). In Noyd v. McNamara, 378 F.2d 538 (10th Cir.) cert. denied, 389 U.S. 1022, 88 S.Ct. 593, 19 L.Ed.2d 667 (1967) the Court stated:

> "The trial court dismissed appellant's action for lack of jurisdiction

and we agree. Although appellant has exhausted his administrative remedies as that term is concerned with Air Force regulations, he has not exhausted the military process and has not been denied, nor can we anticipate that he will be denied, a full consideration of his constitutional rights within the complete scope of that process." (378 F.2d at 539–540).

◼ If the plaintiff is to circumvent the requirement for exhaustion of the administrative remedies available and obtain a preliminary injunction, he must show the following four basic conditions have been met, as stated in Covington v. Schwartz, 230 F.Supp. 249 (N.D.Cal. 1964), modified and aff'd, 341 F.2d 537 (9th Cir. 1965):

> (1) likelihood of prevailing on the merits; (2) irreparable injury unless the stay is granted; (3) no irreparable harm to other interested persons; and (4) no harm to the public interest.

If the moving party fulfills these four basic conditions, the Court will then retain jurisdiction, maintaining the *status quo* pending exhaustion of administrative remedies.

### Plaintiff has failed to show his likelihood of prevailing on the merits.

Reference is made to the discussion below on the merits of this action, which clearly indicate that plaintiff has failed to show his likelihood of prevailing on the merits.

### Plaintiff will not suffer irreparable harm if this Court refuses to issue a preliminary injunction in this matter.

◼ Plaintiff asserts that he will suffer irreparable harm if forced to leave his civilian employment to report for active duty. Loss of civilian employment is not considered to be irreparable harm in these matters, especially where the employment is, as here, merely a part-time job as a teaching assistant in the physical activities department at the University of California at Santa Barbara, which plaintiff obtained for financial reasons while attending the University. This type of work is neither vital to the national defense nor permanent in nature.

### Issuance of a preliminary injunction would seriously harm the public interest.

◼ Plaintiff is presently scheduled to report for active duty on September 6, 1968. If plaintiff does not report for active duty on that date, the Army may be unable to fill the officer training position plaintiff should have filled. The need for trained and qualified officers in the Army and other branches of the Armed Forces is critical at the present time. Only one individual is involved here, but if substantial numbers of individuals such as plaintiff were able to forestall their obligated active duty by filing actions such as the one filed herein and were able to obtain preliminary injunctions against the enforcement of military orders, the training of military personnel could be thrown into a state of chaos, thereby creating a substantial and serious harm to the public interest and national defense.

### Plaintiff has failed to state a claim upon which relief can be granted.

Plaintiff voluntarily entered the United States Army Reserve Office Training Corps, and accepted a commission as a Second Lieutenant. As a member of the Armed Forces he has incurred duties and obligations, including the obligation to serve two years active duty in his status as a commissioned officer.

◼ The courts have long recognized that the statutory exemption from military service offered to conscientious objectors pursuant to 50 U.S.C.App. § 456 (j) is a matter of legislative grace rather than constitutional right. Fleming v. United States, 344 F.2d 912 (10th Cir. 1965); Clark v. United States, 236 F.2d 13 (9th Cir. 1956), cert. denied, 352 U.S. 882, 77 S.Ct. 101, 1 L.Ed.2d 80, (1956); Brown v. McNamara, 387 F.2d

150 (3rd Cir. 1967), cert. denied, Brown v. Clifford, 390 U.S. 1005, 88 S.Ct. 1244, 20 L.Ed.2d 105 (1968); Crane v. Hedrick, 284 F.Supp. 250 (N.D.Cal., April 16, 1968). This right to an exemption for civilian conscientious objectors has been held not to apply to individuals who have voluntarily enlisted or entered upon active duty in the Armed Forces. Petition of Green, 156 F.Supp. 174 (S.D. Cal.1957), appeal dismissed as moot, 264 F.2d 63 (9th Cir. 1959);·· Brown v. McNamara, supra.

The landmark decision in the area of conscientious objection is that of United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), wherein the Supreme Court held that it was constitutional to limit conscientious objection to that which is based upon "religious training and belief", stating:

"The section excludes those persons who, disavowing religious belief, decide on the basis of essentially political, sociological or economic considerations that war is wrong and that they will have no part of it. These judgments have historically been reserved for the Government, and in matters which can be said to fall within these areas the conviction of the individual has never been permitted to override that of the state. * * * The statute further excludes those whose opposition to war stems from a 'merely personal moral code' * *.'' 380 U.S. at 173, 85 S.Ct. at 858.

Congress incorporated the holding in that case into the new law which was passed in 1967 and became the present 50 U.S.C.App. § 456(j) [3] providing:

" * * * the term 'religious training and belief' does not include essentially political, sociological, or philosophical views, or a merely personal moral code."

In furtherance of the national policy given expression in 50 U.S.C.App. § 456 (j), the Department of Defense issued .DOD 1300.6 (August 21, 1962) upon which AR No. 135–25 (January 14, 1967) is based. These are executive directives rather than congressional mandates, and the latter regulation provides:

"5. Eligibility for consideration. a. *Consideration will be given* to request for discharge by reason of conscientious objection when such objection develops subsequent to the member's entry into military service, whether such entry was by induction, enlistment or appointment in any component of the Army.

---

3. 50 U.S.C.App. § 456(j):
"§ 456. Deferments and exemptions from training and service
&ast; &ast; &ast; &ast; &ast;
(j) Nothing contained in this title [sections 451–454 and 455–471 of this Appendix] shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. As used in this subsection, the term "religious training and belief" does not include essentially political, sociological, or philosophical views, or a merely personal moral code. Any person claiming exemption from combatant training and service because of such conscientious objections whose claim is sustained by the local board shall, if he is inducted into the armed forces under this title, [sections 451–454 and 455–471 of this Appendix], be assigned to noncombatant service as defined by the President, or shall, if he is found to be conscientiously opposed to participation in such noncombatant service, in lieu of such induction, be ordered by his local board, subject to such regulations as the President may prescribe, to perform for a period equal to the period prescribed in section 4(b) [section 454(b) of this Appendix] such civilian work contributing to the maintenance of the national health, safety, or interest as the local board pursuant to Presidential regulations may deem appropriate and any such person who knowingly fails or neglects to obey any such order from his local board shall be deemed, for the purposes of section 12 of this title [section 462 of this Appendix], to have knowingly failed or neglected to perform a duty required of him under this title [sections 451–454 and 455–471 of this Appendix].
&ast; &ast; &ast; &ast; &ast;

**324**

b. *Consideration will not be given* to request for discharge based solely on conscientious objection which existed but was—

"(1) Not claimed prior to the member's initial entry into military service either by induction or enlistment or appointment in any component of the Army; * * *."

 AR No. 135–25 follows the statutory definition of "religious training and belief", thus excluding claims of conscientious objection based merely upon political or philosophical views. In addition, this regulation clearly establishes that there is no vested right to a discharge, rather that such action lies within the discretion of the military, and requests will be granted to the extent practicable and equitable. In re Kanewske, 260 F.Supp. 521 (N.D.Cal.1966), appeal dismissed as moot, 383 F.2d 388 (9th Cir. 1967).

 Plaintiff alleges that he was deprived of the constitutional right of due process because of the failure of the Army to provide the same administrative review of his request given to individuals before the Selective Service Board. However, the necessity of the Armed Forces to order and control those already within its operation is a sufficiently rational basis for such distinction. Brown v. McNamara, supra; Noyd v. McNamara, supra. As stated in Burns v. Wilson, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953):

" * * * the rights of men in the armed forces must perforce be conditioned to meet certain overriding demands of discipline and duty, and the civil courts are not the agencies which must determine the precise balance to be struck in this adjustment." 346 U.S. at 139–140, 73 S.Ct. at 1048.

Plaintiff voluntarily accepted a commission in the United States Army Reserve and agreed in writing to serve on active duty for a period of two years. He received payments of $40. per month from the Army during his junior and senior years, plus approximately $1,000

for attendance at summer camp, and he has been granted numerous delays in order that he might complete his graduate studies. He has been exempted from the draft for the past eight years while attending the University of California at Santa Barbara. He has received the benefits offered under the R.O.T.C. program and now he has an obligation to fulfill as a military officer. His only right to claim exemption from military service is through the military channels.

 Plaintiff applied for a discharge pursuant to AR No. 135–25 and his application was handled in conformity with the regulations involved. The administrative procedures established by DOD 1300.6 do not violate constitutional rights to due process and equal protection of the laws. Brown v. McNamara, supra. The Army, based upon the record before it, determined that plaintiff was not entitled to a discharge. This was within its discretion to decide, and the plaintiff cannot now seek a civilian review of his application by coming before this Court. In re Kanewske, supra.

 Since the determination of the Army denying discharge to the plaintiff in this case was made under fair procedures and was not arbitrary or capricious, it is final and binding upon plaintiff unless there was no basis in fact for such a determination. Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953); Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955); Petition of Green, supra; Noyd v. McNamara, supra.

*There was basis in fact for denying plaintiff's application for discharge by reason of his contended conscientious objection.*

 Plaintiff's military record and his request for discharge give ample basis in fact for denying his application. His first expression of a desire to be discharged from the Army was contained in his letter of May 2, 1967, (Record, pp. 37–37a), wherein he stated he was "worried and depressed" about "having to go into the Army." He made no direct

reference to any *"religious* training and belief," but merely said, "You might call me a pacifist or a conscientious objector, if you like." It was not until the Army responded by asking him to submit an application pursuant to AR No. 135–25 that plaintiff made any claim that he was a "conscientious objector." While his application does make reference to "my belief in a Supreme Being" (Record, p. 26b), it and the other documents in his military record indicate that *religion is not the basis* for his conscientious objection. Instead, it is based upon his "philosophy of life" (Record, p. 26d), a "philosophy" which apparently predates his commission and therefore makes him ineligible for a discharge under AR 135–25 (Exhibit "B", p. 10). This fact is borne out by the statements contained in the various reference letters submitted on plaintiff's behalf.

Plaintiff's objection to military service appears to stem from his idealistic philosophy of life concerning the conflict in Vietnam, war in general, the military, and use of violence. Ample evidence of this can be found in plaintiff's letters and his application and in the letters submitted by his friends and relatives. While these views might be totally sincere, they do not conform to the legal requirements for a discharge as outlined in the Seeger decision, supra, 50 U.S.C.App. § 456(j) and AR No. 135–25.

In accordance with the requirements of AR No. 135–25, plaintiff was directed to take a psychiatric and chaplain examination, which he did on August 27, 1967. The reports of both the Army psychiatrist and the Army chaplain provide a substantial basis in fact, as the conclusion of each person is that plaintiff's beliefs are based upon a "personal conviction" or philosophy, and possibly a "fear of going to war" rather than a religious conviction. (Record, pp. 26i–26j, 26m–26n). In addition, the National Selective Service Headquarters was requested to and did render an advisory opinion to the effect that plaintiff would not be considered qualified for exemption under the draft laws. (Record, p. 21).

The Court must conclude that plaintiff is a commissioned officer in the United States Army Reserve and is obligated to serve two years of active duty in the United States Army. He has been permitted to remain at the University of California at Santa Barbara for the past eight years and has delayed his entry into active duty by requesting three delays for educational purposes and submitting an application for discharge. It is now time for plaintiff to begin fulfilling his active duty obligation, without further delay.

In accordance with the foregoing, which shall also constitute findings of fact and conclusions of law, the Court now makes its formal Findings of Fact and Conclusions of Law, as follows:

### FINDINGS OF FACT

1. Plaintiff, presently 27 years of age, enrolled in the University of California at Santa Barbara as a student in 1960, and he has remained at the University for the past eight years.

2. Plaintiff joined the Army Reserve Officers' Training Corps (R.O.T.C.) at the University and on or before September 17, 1962 agreed to serve two years' active duty as part of a six-year military obligation, after receipt of his commission.

3. Plaintiff was commissioned a Second Lieutenant in the Army Reserve on January 27, 1965, the date of his graduation, but at his request was granted a series of three delays in call to active duty for the purpose of attending graduate school at the University for a master's degree in physical education, which delays resulted in his being deferred from active duty for a period of two and one-half years.

4. On March 14, 1967, plaintiff was notified that he would be ordered to active duty on July 21, 1967, to fulfill his obligation.

5. On May 2, 1967, plaintiff first expressed his desire to resign his commis-

sion in a letter to the Department of the Army, which letter contained no reference to any religious basis for his request.

6. Plaintiff, in response to a request from the Army, filed an application for discharge as a conscientious objector in accordance with Army Regulation No. 135-25 (AR 135-25) on June 2, 1967, and he was deferred from active duty pending a decision on this application.

7. In accordance with AR 135-25, plaintiff was examined by an Army psychiatrist who reported that plaintiff's beliefs did not necessarily stem from religious conviction and that his motivation was fear of going to war or engaging in combat, and by an Army chaplain who reported that plaintiff's beliefs were based upon his personal convictions rather than any religious conviction.

8. In accordance with AR 135-25, an advisory opinion from the Headquarters, Selective Service System, was requested, and the opinion stated that plaintiff would not have been classified as a conscientious objector if he had been considered for induction under the Selective Service laws.

9. Plaintiff's application for discharge was denied by the Army on March 26, 1968, and plaintiff was so notified on April 11, 1968.

10. Plaintiff submitted two requests for reconsideration of his application, on April 14, 1968 and May 19, 1968, and these requests were denied on May 11, 1968 and May 23, 1968, respectively.

11. Plaintiff was advanced to First Lieutenant and notified that he would be ordered to active duty on July 12, 1968 for assignment to Adjutant General Officers Basic Course at Fort Benjamin Harrison, Indiana.

12. Plaintiff's orders were cancelled later and he is presently scheduled to report for active duty on September 6, 1968.

13. The Complaint was filed on July 2, 1968, and a Motion for Temporary Restraining Order was denied on July 8, 1968.

14. The following Conclusions of Law, insofar as they may be considered Findings of Fact, are also found by the Court to be true in all respects. From the foregoing facts, the Court concludes that:

## CONCLUSIONS OF LAW

### I

This Court has jurisdiction over the parties to this action, with the exception of the defendant United States of America.

### II

This Court lacks jurisdiction over the defendant United States of America as this is an unconsented-to suit.

### III

This Court has jurisdiction to rule on whether a Preliminary Injunction may be issued in this matter.

### IV

Plaintiff has failed to exhaust his administrative remedies by not applying to the Army Board for Correction of Military Records under 10 U.S.C. § 1552.

### V

Plaintiff has failed to show his likelihood of prevailing on the merits in that his military record reveals a basis in fact for the denial of his application for discharge under AR 135-25.

### VI

Plaintiff's military record reveals that his claim of conscientious objection is based upon personal convictions rather than religious training and belief as required by the law.

### VII

Plaintiff failed to indicate any claim of conscientious objection until he had received the benefits of several delays in call to active duty for educational purposes and had finally been notified of impending orders to active duty.

### VIII

Plaintiff's application for discharge under AR 135-25 was processed in ac-

cordance with the Army regulations and these procedures did not violate plaintiff's constitutional rights.

### IX

Any and all of the foregoing Conclusions of Law which may be deemed to constitute Findings of Fact are hereby adopted as Findings of Fact.

### ORDER

By reason of the foregoing Decision, Findings of Fact and Conclusions of Law, it is hereby ordered that Judgment be entered denying plaintiff's motion for preliminary injunction.

Let judgment be entered accordingly.