Jorge J. MONTILLA, Plaintiff,

v.

Melvin R. LAIRD, Secretary of Defense of the United States; Secretary of the Army of the United States; the Commander United States Army Reserve, Components Personnel Center; The Commander, Headquarters, Third U. S. Army, Puerto Rico, Defendants.

Civ. No. 446-71.

United States District Court,
D. Puerto Rico.

July 17, 1971.

Olaguibeet Lopez-Pacheco, Hato Rey, P. R., for plaintiff.

Julio Morales Sánchez, U. S. Atty., San Juan, P. R., for defendants.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

TOLEDO, District Judge.

Plaintiff filed a complaint on June 30, 1971, seeking a temporary restraining order prohibiting the defendants, their agents, servants and other persons acting upon their orders or authority from enforcing orders to plaintiff to report to active duty in the U. S. Army and from removing him from the jurisdiction of this Court pending the final determination of the complaint. Plaintiff further seeks that this Court, upon final hearing, issue an order directing defendants to cancel the outstanding orders to report to active duty and process plaintiff's case administratively in accordance with applicable laws and regulations.

On July 1, 1971, this Court issued a Temporary Restraining Order which was to expire on July 8, 1971. A hearing was held on said date for the consideration of plaintiff's motion for a preliminary injunction.

At said hearing, attorneys for both parties presented their respective testimony, documentary evidence and their oral argument.

The Court, at said hearing, requested counsel for both parties to submit a memorandum of law on the question of: (1) jurisdiction of this Court, and (2) the notice required by Paragraph 8a, Army Regulations 135–25, to be filed not later than on the afternoon of July 13, 1971. The Temporary Restraining Order was extended for a period of ten days with the consent of both parties.

The uncontested facts as set forth in the complaint, the exhibits admitted in evidence and the legal memoranda submitted by the parties, are set forth chronologically below.

Jurisdiction of this Court has been invoked pursuant to Title 28, United States Code, Section 1331 because the action arises under the United States Constitution.

### THE FACTS

Plaintiff is a medical doctor specializing in the field of pediatrics and child adolescent psychiatry. Upon graduating from the University of Puerto Rico Medical School in May 1968, plaintiff, on September 1968, applied for a commission in the United States Army Reserve. On December 3, 1968, he was commissioned as First Lieutenant pursuant to the "Berry Program".[1] Thereafter, he has been under the direct command of the Commanding Officer, U. S. Army Reserve Components Personnel Center, Fort Benjamin Harrison, Indianapolis, Indiana, receiving orders and notifications from said Commanding Officer by mail and through the Commander, Headquarters, Third U. S. Army—Puerto Rico, Fort Buchanan, Puerto Rico.

On December 24, 1970, plaintiff informed, in writing, his Commanding Officer at Fort Benjamin Harrison, Indiana, that he had become a conscientious objector to war, in any form, by reason of his "moral, ethical and patriotics beliefs as a Puerto Rican," and as such requested a discharge from the Armed Forces of the United States as a conscientious objector.

On February 24, 1971, plaintiff submitted a formal application for discharge and the appropriate documents with the required information, pursuant to the applicable U. S. Army Regulation 135–25. By letter of March 18, 1971, plaintiff was provided by the Personnel Center at Fort Benjamin Harrison, Indiana, with a copy of the U. S. Army Regulation 135–25, and was notified that he had a right to appear in person before an Officer of Grade O–3 or higher, in accordance with Paragraph 7b(3) of said Army Regulation.

In accordance with said letter, plaintiff on April 3, 1971, requested an inter-

---

1. Under the Berry Program, a doctor in medicine is granted a deferment so he may complete a residency in medicine and subsequently, enter the Service as a Specialist.

view with an officer of Grade 0-3 or higher.

On letter of May 28, 1971 from the Department of the Army, Commander, Headquarters, Third U. S. Army—Puerto Rico, Fort Buchanan, Puerto Rico, plaintiff was notified of the scheduling of interviews, in connection with his application for discharge, with a Chaplain and an Officer of the U. S. Army. On June 3, 1971, at 1000 hours at Naval Station, San Juan, Puerto Rico and at 1400 hours at Fort Buchanan, Puerto Rico, respectively, plaintiff attended both interviews at the specified date.

By letter of June 2, 1971, later amended by telegram from U. S. Third Army—Puerto Rico, Fort Buchanan, Puerto Rico, plaintiff was advised to report to a psychiatrist at Roosevelt Roads, U. S. Navy, Ceiba, Puerto Rico, for psychiatric evaluation in regard to his application for conscientious objection discharge.

On June 15, 1971, plaintiff was notified by U. S. Army Reserve Components Personnel Center at Fort Benjamin Harrison, Indiana, that he had been promoted as of May 23, 1971, to the grade of Captain, MC, U.S.A.R. By letter of June 17, 1971, from such Center, plaintiff was ordered to active duty, the effective date being July 5, 1971, at Fourth U. S. Army, Fort Sam Houston, Texas; while his application for discharge was still being processed without any notification as required by Army Regulation 135-20, having been given as to it.

Plaintiff then filed on June 30, 1971 this civil action requesting a preliminary injunction.

On the eve of the hearing, on July 6, 1971, plaintiff received, by mail, a message purporting to be the notice required by Paragraph 8a Army Regulation 135-20.

In essence, plaintiff prays in the complaint that this case be processed administratively in accordance with the law and regulations and contends that defendants violated Army Regulation 135-25 ordering him to active duty and that removal of him from Puerto Rico violates the First and Fifth Amendment of the Constitution of the United States in that such action, would deprive him of "his most adequate and convenient forum to legally question a denial of his application for a discharge as a conscientious objector, causing him in this manner irreparable harm."

## JURISDICTION OF THIS COURT OVER THE CONTROVERSY

■■ At the very outset, this Court was faced with the need to have personal jurisdiction over the proper defendant, that is, over the commanding officer, U. S. Army Reserve Components Center, Fort Benjamin Harrison, Indiana.

Plaintiff asserted in its complaint that there was personal jurisdiction by reason of Title 28, Section 1391(e) and by reason of the fact that plaintiff and one of the defendants, the Commander, Headquarters Third U. S. Army—Puerto Rico, Fort Buchanan, Puerto Rico, are residents in the geographical jurisdiction of this Court.

This Court believes the problem faced in Schlanger v. Seamans, 401 U.S. 487, 91 S.Ct. 995, 28 L.Ed.2d 251, 1971, is not present for the action before us is a civil action.[2]

---

2. In that case the Supreme Court expressed its doubts that Section 1391 would be available in Habeas Corpus petitions. On footnote number 4, the Court said: "Although by 28 U.S.C. § 1391 (e) Congress has provided for nationwide service of process in a 'civil action in which each defendant is an officer or employee of the United States' the legislative history of that section is barren of any indication that Congress extended habeas corpus jurisdiction. That section was enacted to broaden the venue of civil actions which could previously have been brought only in the District of Columbia. See H.R.Rep.No.536, 87th Cong., 1st Sess., 1; S.Rep.No.1992, 87th Cong., 2d Sess., 2. Though habeas corpus is technically 'civil', it is not automatically subject to all the rules governing ordinary civil actions. See Harris v. Nelson, 394 U.S. 286, [89 S.Ct. 1082, 22 L.Ed.2d 281]."

A non unit reservist subject to the command of the Commanding Officer, U. S. Army Reserve Components Personnel Center, Indiana, is in a very unusual position, where if no personal jurisdiction were available at his place of residence, he will have to move to the locality of such Commanding Officer in request of legal relief when needed and appropriate.

In the present case, the plaintiff is a non unit reservist, and as such, is not attached to any unit in this district of his residence. He has been an all-time permanent resident of the district of Puerto Rico, where he brings this action. He has had no physical contact with the district where the record-keeping center is located, and no reason to have such contact. Thus, in order to bring his action in the district where the respondent in his direct chain of command is located, would require him to travel to a distant district where he has no business apart from filing the suit.

Also the Record-Keeping Center has initiated many contacts between plaintiff and military personnel in this district of Puerto Rico, plaintiff's district of residence. There has been a psychiatric evaluation performed at Roosevelt Roads Naval Base, Ceiba, Puerto Rico, a chaplain interview at the U. S. Naval Station, San Juan, Puerto Rico, and the officer hearing at Headquarters, Third U. S. Army—Puerto Rico, Fort Buchanan, Puerto Rico. All of these contacts were made through the Commander Headquarters, Third U. S. Army—Puerto Rico, Fort Buchanan, Puerto Rico, acting in the processing of plaintiff's conscientious objection discharge application at the request of the U. S. Army Reserve Components Personnel Center, Fort Benjamin Harrison, Indiana. Thus it can be said that the commanding officer has entered this district through agents and for legal purposes, is thus present in this district. A litigant may expose himself to a jurisdiction in a state or district by doing business there. McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed. 2d 223 (1957); International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

Finally, to say otherwise, would create a problem of concentration of litigation in a few districts combined with the hardship to reservist petitioners in bringing suits in distant forums. Unlike the active duty cases where the permanent duty stations will be scattered throughout the United States, the non unit reservist cases will tend to concentrate in the few districts where the service will choose to establish their record-keeping centers, in our particular case, Indiana.

One of the primary purposes of the Mandamus and Venue Act of 1962[3] and the Habeas Corpus Amendments of 1949 and 1966[4] was to relieve the hardship and create easier access for persons seeking relief in the federal courts.[5]

This Court's position as to personal jurisdiction has been sustained by federal courts before. See Nason v. Secretary of the Army, 304 F.Supp. 422 (D. Mass.1969); Donigian v. Lair, 308 F. Supp. 449, 453 (D.Md.1970); Armstrong v. Wheeler, No. 70–1755 (E.D.Pa. Dec. 2, 1970).[6]

3. Adding 28 U.S.C. Sects. 1361 and 1391 (e) (1964) to the judicial code.

4. 28 U.S.C. Sect. 2255 (1964) and 28 U.S.C. 2241(d) [Supp. V 1965–69]

5. See generally Sen.Rep.No.1992, 87th Cong., 2d Sess., to accompany H.R. 1960, reprinted in 2 U.S.Code Cong. and Adm. News, p. 2784 (1962). Professor Moore interprets 1391(e) as expanding subject-matter jurisdiction

 to make it possible to bring a civil action * * * in district courts outside the District of Columbia, which because of prior limitations—mainly venue and service of process—could only be brought in the district court for the District of Columbia. 2 J. W. Moore, Federal Practice S. 4.29, at 1210–11 (2d Ed. 1967).

6. Although these cases came to court under the Habeas Corpus Statute, this Court is of the opinion that their analysis is applicable to actions in request of an injunction.

## EXHAUSTION OF ADMINIS- TRATIVE REMEDIES

 The previous determination does not dispose of the controversy since the defendant contends that this Court lacks jurisdiction because the administrative remedies have not been exhausted. Exhaustion of the administrative remedies provided by the military service is a required predicate to relief in civil courts. Gonzales Salcedo v. Lauer, 430 F.2d 1282 (9th Cir. 1970). The resort to a district court for temporary and permanent injunction is premature where plaintiff has not exhausted his administrative remedies. Morbeto v. United States, 293 F.Supp. 313, 321 (C.D.Cal.1968); Noyd v. McNamara, 378 F.2d 538, 389 U.S. 1022, 88 S.Ct. 593, 19 L.Ed.2d 667.

At the time this Court granted the Temporary Restraining Order, plaintiff had not been advised by defendants that final action as to his application for discharge as a conscientious objector cannot be made prior to his reporting date for duty. During the 10 days granted when the Temporary Restraining Order was in effect, that is, on July 6, 1971, plaintiff was advised by the U. S. Army Reserve Components Center, Fort Benjamin Harrison in accordance with Paragraph 8a of Army Regulation 135–25,[7] that they would not be able to complete the processing of his application for conscientious objector status prior to his reporting date. Plaintiff was directed to report on July 7, 1971, to Darnell Army Hospital, Fort Hood, Texas. Plaintiff was further advised that the application and reports of interviews, would be forwarded to his active duty station for continued processing.

At the hearing on July 8, 1971, Major Paul S. Kent, Adjutant, Third U. S. Army—Puerto Rico, Fort Buchanan, Puerto Rico, stated that pursuant to a request of plaintiff's Commanding Officer to the Commanding General of the Third U. S. Army, Fort McPherson, Georgia, plaintiff was interviewed by a chaplain, a psychiatrist and an officer of the grade O–3 or higher, in accordance to Paragraph 7, Army Regulation 135–25.

Said Major further testified that all these interviews have been complied with and that he had received said reports on July 8, 1971. He further testified that the aforementioned reports were to be forwarded immediately to higher headquarters for their corresponding evaluations.

This Court understands that at present, the advice required by Paragraph 8a, Army Regulation 135–25, has been complied with and that the military authorities have a right to evaluate the application for discharge based on conscientious objection in accordance with the reports to be forwarded by Major Paul S. Kent.

In order to eliminate the requirement of exhaustion of administrative remedies available, and to obtain a preliminary injunction, plaintiff must show that the following four basic conditions have been met, as required in Covington v. Schwartz, 230 F.Supp. 249 (N.D.Cal.

---

7. Paragraph 8a of said Army Regulation 135–25, states as follows:

 a. Normally a minimum period of 90 days is required to finalize the processing of an application submitted in accordance with this regulation. The submission of an application for discharge by reason of conscientious objection subsequent to the date the individual's orders are published announcing reporting date for active duty or active duty for training is not a basis for delay in reporting for desig-nated duty. *In the event an individual is ordered to report to active duty or active duty for training while a request for discharge under this regulation is being processed, and the individual is advised that final action cannot be made prior to his reporting date for duty, the individual will be required to comply with his orders.* In such instance, his application will be forwarded to the appropriate Active Army commander for processing. (Emphasis added.)

1964), modified and aff'd., 341 F.2d 537 (9th Cir. 1965):

1.— likelihood of prevailing on the merits of the appeal;

2.— irreparable injury unless the stay is granted;

3.— no substantial harm to other interested persons; and

4.— no harm to the public interest.

Plaintiff claims that he will suffer irreparable harm if ordered to active duty since it will deprive him in violation of the First and Fifth Amendments to the Constitution of the United States of his most adequate and convenient forum to legally question a denial of his application for discharge as a conscientious objector. Plaintiff further alleges that unless the defendants are restrained from ordering him to active duty, his conscience would be violated by forcing him to submit to active duty and participate in the Active Army.

Paragraph 8 of the Army Regulation 135–25, provides in the pertinent part:

"an individual who applies for discharge based on conscientious objection will be assigned duties providing the minimum conflict with his professed beliefs and will be required to maintain the same standards of performance and behavior as other personnel assigned to his unit pending a final decision on his application. . . ."

It is the Court's opinion, that under the present circumstances the need of the U. S. Army for trained and qualified officers is greater than the present desire of the plaintiff to continue as a civilian. Plaintiff voluntarily applied and accepted a commission of First Lieutenant, pursuant to the "Berry Program" and as such, incurred in the duty and obligation to serve two years of active duty and four years in the reserve.

Plaintiff's petition for a discharge based on conscientious objection is guided by Army Regulation 135–25.

In the instant case, pursuant to Army Regulation 135–25, it is for the Army to make the primary determination as to whether to grant or not plaintiff's conscientious objection application.

It is well settled that the administrative procedures established by DOD 1300.6, does not violate the constitutional rights to due process and equal protection of the law. Brown v. McNamara, 387 F.2d 150 (3rd Cir. 1967), cert. denied, Brown v. Clifford, 390 U.S. 1005, 88 S.Ct. 1244, 20 L.Ed.2d 105 (1968).

The issuance of a preliminary injunction, would seriously harm the public interest. Plaintiff was scheduled to report for active duty on July 5, 1971 at Fourth U. S. Army, Fort Sam Houston, Texas. In Morbeto v. United States, 293 F.Supp. 313, at page 322, the Court stated the following:

"Plaintiff is presently scheduled to report for active duty on September 6, 1968. If plaintiff does not report for active duty on that date, the Army may be unable to fill the officer training position plaintiff should have filled. The need for trained and qualified officers in the Army and other branches of the Armed Forces is critical at the present time. Only one individual is involved here, but if substantial numbers of individuals such as plaintiff were able to forestall their obligated active duty by filing actions such as the one filed herein and were able to obtain preliminary injunctions against the enforcement of military orders, the training of military personnel could be thrown into a state of chaos, thereby creating a substantial and serious harm to the public interest and national defense."

In the light of the aforementioned, absent the requirements for the granting of a preliminary injunction as stated in Covington v. Schwartz, supra, this Court is without jurisdiction to grant the preliminary injunction as requested by plaintiff. Furthermore, plaintiff has not exhausted his administrative remedies and has not demonstrated that de-

fendant has not followed the procedure as established in Army Regulation 135–25. To the contrary, the evidence before this Court has clearly established that defendant has complied with Army Regulation 135–25.