David G. RIVERA–RODRIGUEZ,
Petitioner, Appellant,

v.

COMMANDING OFFICER, FIRST U. S. ARMY, et al., Defendants, Appellees.

No. 77–1393.

United States Court of Appeals,
First Circuit.

Argued Feb. 5, 1979.

Decided April 18, 1979.

Harry Anduze Montano, Hato Rey, P. R., with whom Calderon, Rosa-Silva & Vargas, Hato Rey, P. R., was on brief, for petitioner, appellant.

Jose A. Anglada, Asst. U. S. Atty., San Juan, P. R., with whom Julio Morales Sanchez, U. S. Atty., San Juan, P. R., was on brief, for defendants, appellees.

Before COFFIN, Chief Judge, CAMP-BELL, Circuit Judge, JAMESON,* Senior District Judge.

COFFIN, Chief Judge.

This is an appeal from an order of the district court dismissing a suit for injunctive relief by a national guard member who alleged that he timely filed a petition for discharge as a conscientious objector and that the army violated his due process rights by failing to consider the petition and transferring him to involuntary active duty. The court found that injunctive relief was premature, given the petitioner's failure to exhaust his administrative remedies, and vacated a long-standing injunction which had prevented his induction into active duty. We affirm.

On May 11, 1973, appellant, an enlistee in the Puerto Rican Army National Guard, wrote on advice of his sergeant, to Captain Ocasio, his battery commander, asking to be relieved of service in the national guard. No specific reason was given for his "reluct[ance] to . . . [comply with] the contracted military duties." Instead he described "an internal struggle between ideas and principles against the military system, military duties and responsibilities accepted by me at the beginning and a feeling of resistance that increases progressively." Finding the letter ambiguous, Captain Ocasio met with appellant. The primary focus of this meeting appears to have been the five unexcused absences from guard drills which appellant by that time had accrued, rendering him subject to transfer to active duty for "fail[ure] to participate satisfactorily" in the guard. See Army Regulation (AR) 135–91.

Captain Ocasio also discussed the May 11 letter with appellant. According to the captain's testimony at trial, he made little if any attempt to clarify the basis of appellant's request for dismissal, but gathered from the comments made that appellant's principles were political in nature. He concluded the meeting by advising appellant to participate satisfactorily in the future and

offering him an opportunity to "re-do" the drills he had missed. The May 11 letter was not forwarded to the captain's superiors nor was appellant encouraged or advised how to pursue his requests for dismissal. The captain testified that he had not made a determination about appellant's qualifications as a conscientious objector, for neither the letter nor the subsequent meeting left him with the impression that appellant was attempting to have himself so classified.

Appellant's next action was to write to the Adjutant General of the Army in Puerto Rico on June 11 and again on June 22, requesting a hearing on his request to be discharged. Again, other than an oblique parenthetical reference to "religious conflicts, political, ideological, etc." in the letter of June 22, appellant gave no specific reason why he should be discharged and made no mention of conscientious objector grounds. Neither letter was answered. By this time, he had missed three more drills.

On June 28, Captain Ocasio recommended appellant for active duty pursuant to AR 135–91, based on eight unexcused absences. Several days later, appellant was informed that he was being ordered to active duty pursuant to AR 135–91 and given fifteen days to appeal. In response, appellant filed a request for release from the National Guard, protesting the inattention given to his earlier letters and citing his "ethical, religious and political" opposition to violence and militarism and his membership in the Puerto Rican Independence Party. On August 12, appellant met with the Chief of Staff of the Guard and told him that he considered himself a conscientious objector. Soon thereafter, he was informed by the guard that membership in the Independence Party was not grounds for dismissal. He was also informed that since he had been reported to active duty, if he wished to pursue a discharge as a conscientious objector, Army Regulation 135–25 ¶ 8b required that the necessary documents be submitted to the authorities at his active duty station

* Of the District of Montana, sitting by designation.

rather than to the National Guard. After yet another interchange of letters, appellant brought suit in district court, unsuccessfully arguing that the guard had violated his due process rights by ignoring his requests for discharge as a conscientious objector and ordering him to active duty. The same arguments are made on appeal.

Army Regulation 135–25 ¶ 8b provides:

"An individual who is reported by his unit commander for involuntary active duty under provisions of AR 135–91 [unsatisfactory participation in the National Guard] cannot subsequently tender a request for conscientious objector classification under the provisions of this regulation. Such requests will be returned by the unit commander advising the individual to submit his application at his first duty station under the provisions of AR 635–20, AR 600–200, or AR 614–106."

Appellant challenges neither the validity of the regulation nor the guard's determination that he had accrued eight unexcused absences, rendering him an unsatisfactory participant, when he was reported to active duty on June 28. Rather, his contention is that his May 11 letter and its follow-ups in June, filed *before* the date on which he was reported to active duty, were requests for discharge as a conscientious objector and thus that AR 135–25 was wrongfully applied to him. The defendant army officers counter that appellant's early letters gave no notice of his desire to be classified as a conscientious objector, that once he had been reported for involuntary active duty his claim could not be processed by the guard, that appellant has not pursued his claim at his active duty station as AR 135–25 requires and that his failure to utilize the proper administrative channels thus bars

this suit. *See Montilla v. Laird*, 336 F.Supp. 1063, 1067 (D.P.R.1971).

We agree with the district court's finding that the letter of May 11, 1973 was "drafted in such broad terms" that it did not amount to a request to be discharged on conscientious objector grounds. A growing "feeling of resistance" to the "military system, military duties and responsibilities" provides little if any hint that "his convictions [were] religious in origin." *Bates v. Commander, First Coast Guard Dist.*, 413 F.2d 475, 480 (1st Cir. 1969); *see Welsh v. United States*, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970); *United States v. Seeger*, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965). The follow-up letters again contained no reference to conscientious objector grounds for discharge, and no attempt was made to articulate the nature of the ideals or conflicts to which appellant, in passing, referred. Such opacity is not to be explained by an eleventh hour crystallization of views, for appellant's explorations into Rosicrucianism, Pentecostal beliefs, and Jehovah's Witnesses had taken place for years. In the light of this background, the indirectness of the May 11 letter is all the more inexplicable.

It is true, as appellant maintains, that Captain Ocasio's trial testimony suggests that he had scant interest in actively discovering the content of the principles about which appellant had written in his letter of May 11. But we cannot say that their meeting, described by appellant as a discussion "of personal and emotional problems I was having at the time" should have alerted the captain to the possibility that appellant wanted discharge as a conscientious objector.[1] In fact, appellant himself testified that when he wrote the early letters and

---

1. There was considerable confusion at trial as to whether appellant's first letter, on May 11, was itself already untimely under the regulations because the administrative processes by which appellant was to be recommended to involuntary active duty may have been set in motion by that date. Accordingly, there was some suggestion that untimeliness rather than ambiguity was the reason why his request for discharge was not processed by the guard. Appellant contends that if the officials believed

that AR 135–25 ¶ 8b barred a request for conscientious objector classification before a guard member is formally reported to active duty, their interpretation of that regulation was in error. We need not resolve this issue, however, for the district court relied only on the ambiguity in the letter to justify the guard's lack of response, implicitly rejecting the suggestions that the May 11 letter was refused as untimely under AR 135–25, ¶ 8b.

met with Captain Ocasio he would not have defined himself as a conscientious objector according to his then "superficial" understanding of what that classification meant. While a person's "interpretation of his own beliefs" would not be determinative of his qualification as a conscientious objector, *see Welsh v. United States, supra,* 398 U.S. at 341, 90 S.Ct. 1792, we are concerned here not with the merits of his claim but with whether his communications to the army officials prior to June 28, 1973, should have put them on notice that he wished to be classified as a conscientious objector. Appellant cannot, we believe, reasonably fault the officers for not discerning what had not yet taken root in his own mind.

We therefore conclude, as did the court below, that when appellant was reported to active duty on June 28 for unsatisfactory performance, he had not yet submitted a request for conscientious objector classification. Requests filed with the guard after that date were untimely under AR 135–25, ¶ 8b, and as appellant was told, were required by that regulation to be submitted at his active duty station. Appellant failed to do so and accordingly did not properly pursue his available administrative remedy.[2]

That remedy is of course still available to appellant, and we assume that should he choose to file a conscientious objector application at his active duty station, army officials will counsel him in its preparation if he wishes. Whatever the ambiguity in appellant's initial requests for discharge, there can be no question that he now wishes to be classified as a conscientious objector and exempted from further military service on that basis. We take it that at this late date the traffic in review of such applications has thinned out. We would also assume that neither the service nor the individual

would stand to benefit from a prolonged period of uncongenial and enforced association. We would therefore expect that appellant would be afforded a reasonably prompt hearing and decision. In any event, it is an unflattering commentary on the processes of justice that the further processing of appellant's application will take place some six years after the events giving rise to this litigation.

*The judgment of the district court, dismissing this action and vacating its temporary restraining order of January 21, 1974, is affirmed.*

---

**2.** Even if the May 11 letter, coupled with the subsequent meeting and June letters, could be construed as an application to be classified as a conscientious objector, appellant had no right to have a decision made on the application before a subsequent order to active duty took effect. The army regulations would have permitted the officers to advise him "that final action cannot be made prior to his reporting date for duty", to require him to comply with his active duty order immediately and to "forward his application to his active Army Commander for processing." AR 135–25, ¶ 8a. *See Montilla v. Laird,* 336 F.Supp. 1063 (D.P.R. 1971). Thus, even if the guard officers had responded to the letters as appellant claims they should have, it is entirely possible that he would have found himself ordered to active duty and his application processed at that station.