**Lloyd I. TURNER and Erwin E. Koorenny, Plaintiffs,**

v.

**William A. EGAN et al., Defendants.**

**No. A–96–72.**

United States District Court,
D. Alaska.
May 15, 1973.

M. Ashley Dickerson, Anchorage, for plaintiffs.

G. Kent Edwards, U. S. Atty., for Alaska, Timothy Middleton, Asst. Atty. Gen., of Alaska Dept. of Law, Anchorage, Alaska, for defendants.

Before WRIGHT, Circuit Judge, EAST, Senior District Judge and VON DER HEYDT, District Judge.

VON DER HEYDT, District Judge:

### MEMORANDUM AND ORDER

This matter comes before the Court upon motion to dismiss by the United States on behalf of defendant Seamans. The motion has been concurred in by the State of Alaska on behalf of defendants Egan, Elmore, Buckalew, Stringer, Anderson and Moore. The motion is treated as applicable to all defendants.

The facts briefly stated are as follows: The plaintiffs, Turner and Koorenny, are former lieutenant colonels in the Alaska Air National Guard, each of whom had accumulated over 20 years of military service at the time this controversy arose. Plaintiffs were also employed as civilian technicians in the same unit of the National Guard, which procedure is permitted under the provisions set forth in 32 U.S.C. § 709. That Act requires National Guard membership as a condition precedent to employment as a civilian technician. The Act further requires the Adjutant General of the State involved to separate civilian technicians who have been discharged from the National Guard in their military capacity.

An Air National Guard Regulation, designated ANGR 36–05, provides that military officers in the National Guard with an excess of 20 years of military service shall be considered for retention or separation by a "Vitalization Board." ANGR 36–05 provided that notice of the convening of the Vitalization Board be communicated to the military officers concerned through their Unit Commander, together with instructions for securing an opportunity to appear personally before the Board.

On April 12, 1972, notification of the convening of the Vitalization Board was mailed to plaintiffs' Unit Commander. The board convened on April 16, 1972. Plaintiffs had received notification, but did not appear before the board. The recommendation of the Vitalization Board was that plaintiffs were not to be retained in the service of the National Guard, but were to be retired effective June 30, 1972. Pursuant to the provisions of 32 U.S.C. § 709(e)(1), plaintiffs' employment as civilian technicians was terminated effective the same date. Plaintiffs received severance pay, and are receiving full military retirement benefits.

Defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6). Defendants rely on the proposition that the separation of the plaintiffs from the National Guard pursuant to the procedures set forth in ANGR 36–05 is not subject to judicial review since a military officer serves at the pleasure of the President, and has no constitutional right to be retained in the military service. Therefore, the defendants urge that the termination of plaintiffs' employment as civilian technicians under the provisions set forth in 32 U.S.C. § 709(e)(1) is constitutionally permissible. defendants' theory of law is based on the doctrine of noninterference in internal military decisions, and is supported by a long line of cases beginning with Reaves v. Ainsworth, 219 U.S. 296, 306, 31 S.Ct. 230, 55 L.Ed. 225 (1911), and continuing through Pauls v. Secretary of Air Force, 1 Cir., 457 F.2d 294, 297 (1972).

Plaintiffs' exact position is not entirely clear. Part of plaintiffs' position is that the above-cited cases are inapplicable to the instant cause since none of those cases involve the application of 32 U.S.C. § 709. However, the thrust of plaintiffs' contention appears to be that the termination of their employment as civilian technicians is improper for the reason that their forced retirement from the National Guard was conducted in a manner which did not satisfy the requirements of procedural due process. Plaintiffs have alleged insufficient notice of the convening of the Vitalization Board. Plaintiffs have also alleged ineffective administrative appellate rights, on the ground that 32 U.S.C. § 709(e)(5) does not extend the right of appeal to plaintiffs beyond the Adjutant General. With less specificity, plaintiffs have alleged violation by the military of its own regulations and applicable statutes.

The issue for determination here appears to be whether the noninterference doctrine is applicable to proceedings of the Vitalization Board pursuant to ANGR 36–05, with the result that this court would be without jurisdiction to review the forced retirement of plaintiffs in their military capacity. If so, then the termination of plaintiffs' employment in their capacity as civilian technicians would be proper under the provisions set forth in 32 U.S.C. § 709(e)(1).

The problem of the basis upon which internal military affairs be made subject to court review has been the object of much litigation. By far the most instructive collation of these cases is found in a decision of Judge Clark, Mindes v. Seaman, 453 F.2d 197 (5th Cir. 1971). Several policy considerations underlying judicial reluctance to interfere with military matters are set forth in *Mindes* at 199:

. . . Traditional judicial trepidation over interfering with the military establishment has been strongly manifested in an unwillingness to second guess judgments requiring military expertise and in a reluctance to substitute court orders for discretionary military decisions. Concern has also been voiced that the courts would be inundated with servicemen's complaints should the doors of reviewability be opened. But the greatest reluctance to accord judicial review has stemmed from the proper concern that such review might stultify the military in the performance of its vital mission.

Subsequent to analyzing numerous cases on the subject, including many of those cited by the litigants here, the *Mindes* court, at 201, reached two basic conclusions: First, a court should not review internal military affairs in the absence of (a) an allegation of the deprivation of a constitutional right or an allegation that the military has acted in violation of applicable statutes or its own regulations, and (b) exhaustion of available intraservice corrective measures. Secondly, the court concluded,

not all such allegations are reviewable. If a court is presented with sufficient allegations to grant review, it must analyze the substance of those allegations in the light of the policy reasons which stand behind nonreview of military matters. The *Mindes* court, at 201, set forth several factors to be considered during the analysis of the allegations:

1. The nature and strength of the plaintiff's challenge to the military determination. Constitutional claims, normally more important than those having only a statutory or regulatory base, are themselves unequal in the whole scale of values—compare haircut regulation questions to those arising in court-martial situations which raise issues of personal liberty. An obviously tenuous claim of any sort must be weighted in favor of declining review. [citations omitted].

2. The potential injury to the plaintiff if review is refused.

3. The type and degree of anticipated interference with the military function. Interference per se is insufficient since there will always be some interference when review is granted, but if the interference would be such as to seriously impede the military in the performance of vital duties, it militates strongly against relief.

4. The extent to which the exercise of military expertise or discretion is involved. Courts should defer to the superior knowledge and experience of professionals in matters such as promotions or orders directly related to specific military functions.

Considering that plaintiffs have alleged deprivations of constitutional rights before and after the convening of the Vitalization Board, this court proceeds to determine whether the allegations are reviewable under the test of *Mindes*.

Before balancing the allegations against the policy reasons underlying nonreviewability, the substance of those allegations should be examined closely. Plaintiffs do not deny receiving actual notice of the convening of the Vitalization Board. Plaintiffs thus had an opportunity to appear before the board, but for some reason failed to do so. Whether the failure of plaintiffs to appear before the board or to seek a continuance constituted a waiver of rights will not be considered, since that point has not been before the court.

Applying the test of *Mindes*, it is clear that the facts and circumstances of this case do not warrant judicial review. Since the forced retirement of plaintiffs under the procedure set forth in ANGR 36–05 is not infirm, then the termination of plaintiff's employment as civilian technicians under the provisions of 32 U.S.C. § 709(e)(1) is not infirm.

The nature and strength of plaintiffs' challenge to the military decision is not of sufficient weight to warrant review. As indicated above, the claimed constitutional deprivations approach tenuous classification. Additionally, the forced retirement after 27 years of service under honorable conditions is a situation easily distinguishable from outright discharge before 20 years of service have been accrued, or in cases where the discharge is under conditions other than honorable. Had either of these two variables been involved, plaintiffs' case for review might well have had greater convincing force.

Little potential injury to plaintiffs exists if review is refused. Each is entitled to full military retirement benefits, including retirement pay, medical benefits, and commissary and exchange privileges. Additionally, upon forced retirement, each plaintiff here received letters of recommendation from their former commanding officers for use in obtaining future civilian employment.

To grant judicial review here seriously would impede the military in the per-

**564**

formance of its vital duties in the national interest. The function of the Vitalization Board, as set forth in ANGR 36–05, is to offer recommendations to the Adjutant General on personnel actions deemed essential to maintain a high capability of the National Guard, including recommendations for retention of officers considered essential to the combat capabilities of the unit. The entire program of revitalization is centered upon the need to avoid the loss of combat readiness which in turn is related to the retention of unqualified officers. If this court assumed review of the board's decision, the Alaska Air National Guard might well be compelled to exist in limbo awaiting the outcome of lengthy litigation, rather than conducting an orderly training program directed to sharpening its operational readiness. To permit judicial review of these internal military determinations clearly would tend to diminish the ability of the military to perform its vital duties.

Equally clear in this case is the fact that this court will of necessity have to defer to the expertise of the military in determining the fitness of these plaintiffs to continue in the service of the Alaska Air National Guard. Although the court could substitute its judgment for that of the Vitalization Board, the function of determining which officers are sufficiently qualified for retention in active service is one properly left to the experience and discretion of the military, those professionally trained for that purpose.

Therefore, it is ordered:

1. That defendants' motion to dismiss is granted as to all defendants.

2. That plaintiffs' complaint is dismissed with prejudice.

EAST, Senior District Judge, dissents.