Charles A. NeSMITH, Plaintiff-Appellant,

v.

Clyde E. FULTON et al.,
Defendants-Appellees.

No. 78–1746.

United States Court of Appeals,
Fifth Circuit.

April 7, 1980.

Rehearing Denied May 5, 1980.

Stewart R. Brown, Roger Mills, Macon, Ga., for plaintiff-appellant.

Arthur K. Bolton, Atty. Gen., Michael J. Bowers, Robert S. Stubbs, II, Don A. Langham, John C. Jones, Asst. Attys. Gen., Atlanta, Ga., for defendants-appellees.

Before GEE, TJOFLAT and ANDERSON, Circuit Judges.

GEE, Circuit Judge:

Appellant Charles A. NeSmith was employed as a civilian technician in the Geòr-

gia Air National Guard. He was also a military member of the 202nd Electronics Installation Squadron of the Guard. On October 15, 1976, NeSmith was dismissed from his position as a civilian technician, and on October 22, 1976, he was denied reenlistment and discharged as a military member of the Georgia Air National Guard. NeSmith brought suit under 42 U.S.C. § 1983 to challenge his civilian dismissal and denial of his military reenlistment, alleging that these actions were the product of a "malicious and vindictive" campaign against him, led by the recently appointed commander of his squadron, Clyde E. Fulton, with the acquiescence of Fulton's superior officers. The trial court dismissed NeSmith's case on the pleadings, and he now appeals that action.

Preliminarily, we must determine whether NeSmith's appeal is timely. Rule 4(a) of the Federal Rules of Appellate Procedure requires that notice of appeal in civil cases be filed within 30 days of entry of the judgment or order from which an appeal is sought, unless the United States or an officer or agency thereof is a party, in which case appeal may be filed within 60 days. NeSmith filed his appeal 34 days after the entry of judgment against him. Since "the time requirement within which an appeal must be taken is mandatory and jurisdictional," *Gulf-Tampa Dry Dock Co. v. The Vessel VIRGINIA TRADER*, 435 F.2d 150, 151 (5th Cir. 1970), this court has appellate jurisdiction over the instant case only if NeSmith or one or more of the defendants [1] are officers or agents of the United States. *See, e. g., Funderburk v. Wainwright*, 484 F.2d 681 (5th Cir. 1973) (dismissing appeal for want of jurisdiction when notice of appeal not filed within 30 days); *Tribbitt v. Wainwright*, 462 F.2d 600, 601 (5th Cir. 1972).

■ As a civilian technician employed under the National Guard Technicians Act, 32 U.S.C. §§ 709 et seq. (1976), NeSmith enjoyed the status of federal *employee*. 32 U.S.C. § 709(d) (technician is employee of Department of Army or of Air Force); *see Davis v. Vandiver*, 494 F.2d 830, 832 (5th Cir. 1974) ("The National Guard Technician Act of 1968, 32 U.S.C.A. § 709 . . . confer[red] *federal* status on civilian technicians . . . ."); *Chaudoin v. Atkinson*, 494 F.2d 1323, 1327 (3d Cir. 1974) (under 32 U.S.C. § 709 a civilian technician "is deemed to be a federal employee"). However, NeSmith's federal employee status did not make him an "officer or agency" of the United States for purposes of Rule 4(a) of the Federal Rules of Appellate Procedure. The role of civilian technician did not vest any managerial decisions or other significant authority in him, *see Buckley v. Valeo*, 424 U.S. 1, 125–126, 96 S.Ct. 612, 685, 46 L.Ed.2d 659 (1976) ("officer of United States" means appointee exercising significant authority pursuant to the laws of the United States). Nor did a suit by NeSmith involve the United States as a real party in interest requiring various government officials to review the decision to appeal. *See Michaels v. Chappell*, 279 F.2d 600, 602 (9th Cir. 1960), *cert. denied*, 366 U.S. 940, 81 S.Ct. 1663, 6 L.Ed.2d 851 (1961) (person not "official or agency" of United States for purposes of 60-day time limit on filing appeal when suit by or against him does not involve interests of the United States that require different echelons of government officials to decide whether to appeal an adverse judgment, and instead involves only interest of individual, permitting him alone to make decisions with respect to appeal); *Hare v. Hurwitz*, 248 F.2d 458, 461–62 (2d Cir. 1957). In addition, NeSmith was not

---

1. The defendants were Clyde E. Fulton, a captain and Air National Guard technician charged with supervising all other technicians in the 202nd Electronics Installation Squadron; Benjamin H. Bruce, an Air National Guard technician and Technician Personnel Officer for the Georgia Air National Guard; George W. Finison, a lieutenant colonel in the Georgia Air National Guard and commanding officer of the 202nd Electronics Installation Squadron; Robert L. Cochran, a major in the Georgia Air National Guard and chief of central base administration, 116th Tactical Fighter Wing, Georgia Air National Guard, Dobbins Air Force Base, Georiga (the support unit for the 202nd Electronics Installation Squadron); Billy M. Jones, Adjutant General of the State of Georgia, and the Georgia Air National Guard.

an officer of the United States by virtue of his military membership in the Georgia Air National Guard, for he had not been ordered into active service. *Chaudoin v. Atkinson, supra* 494 F.2d at 1329; *Williams v. United States*, 189 F.2d 607 (10th Cir. 1951). NeSmith's participation as a party thus did not authorize a 60-day time limit for filing appeal in this case. For his appeal to have been timely, then, one of the defendants must qualify as an officer or agency of the United States.

█ Among those named as defendants by NeSmith was the adjutant general of Georgia. It is true that an adjutant general is at least in part a state officer. In *Davis v. Vandiver, supra*, 494 F.2d at 832, we observed:

> The principal purpose of the National Guard Technicians Act of 1968, 32 U.S.C. § 709 et seq., was to create a bifurcated nature of technician employment—to confer *federal* status on civilian technicians while granting administrative authority to *State* officials, headed in each state by the Adjutant General. (Emphasis in original.)

The legislative history of the National Guard Technicians Act also states clearly that Congress viewed the adjutants general as state officers. House Report No. 1823 stated that the authority of the adjutants general under 32 U.S.C. § 709 to employ and administer the civilian technician program was intended to

> (a) recognize the State character of the Guard and (b) meet the requirement of giving the adjutants general (who are State officers) the statutory function of employing federal employees. H.R.

Rep.No. 1823, 90th Cong. 2nd Sess. (1968); 1968 U.S.Code Cong. & Admin.News, pp. 3318, 3330.

However, that an adjutant general is a state officer does not preclude his simultaneously being a *federal agency*. The Third Circuit, in *Chaudoin v. Atkinson, supra*, 494 F.2d at 1329, held that although an adjutant general was a state rather than a federal officer unless called into active service, he was also an "agency or agent" of the United States because "32 U.S.C. § 709 charges . . . [him] with employment and administration of the civilian technicians who are federal employees." *See also Vargas v. Chardon*, 405 F.Supp. 1348, 1351–52 (D.P.R.1975). The conclusion that an adjutant general is a federal agency as well as a state officer reflects the hybrid state-federal character of the National Guard and of the role of adjutants general in administering it. We therefore adopt it and find NeSmith's appeal timely because brought in a suit to which a federal agency is a party. Having jurisdiction of the appeal, we turn now to assess the merits of the instant action.

█ NeSmith contends that his removal from his position as a civilian technician in the Georgia Air National Guard violated his constitutional due process rights because it was arbitrarily and capriciously based on his superior officers' hostility towards him.[2] Relying on *Tennessee v. Dunlap*, 426 U.S. 312, 96 S.Ct. 2099, 48 L.Ed.2d 660 (1976), which held that a civilian technician loses any entitlement to his position when his enlistment as a military member of the National Guard ends,[3] the trial judge dis-

---

**2.** NeSmith's complaint also charges that his dismissal from civilian technician employment was effected without notice and a hearing. Although this issue is not discussed in the briefs on appeal, our examination of the record satisfies us that NeSmith did receive due process notice and a hearing.

**3.** The National Guard Technicians Act requires that a civilian technician must be a military member of the National Guard, 32 U.S.C. § 709(b) and that a technician who is separated from the National Guard "be promptly separated from his technician employment by the Ad-

jutant General of the jurisdiction concerned," 32 U.S.C. § 709(e)(1).

32 U.S.C. § 709(b) states that

[e]xcept as prescribed by the Secretary concerned, a technician employed under subsection (a) shall, while still employed, be a member of the National Guard and hold the military grade specified by the Secretary concerned for that position.

32 U.S.C. § 709(e)(1) states that

"[n]otwithstanding any other provision of law and under regulations prescribed by the

missed this claim in the mistaken belief that NeSmith had been terminated as a civilian technician only after he had been denied reenlistment and discharged as a military member of the Georgia Air National Guard, and was thus without entitlement to civilian technician employment.

However, NeSmith was in fact dismissed from his position as a civilian technician on October 15, 1976, and was not terminated as a military member of the Georgia Air National Guard until one week later, on October 22, 1976. During his term of enlistment in the National Guard, a civilian technician can be separated from his technician employment by the adjutant general only "for cause"[4] or for failure to meet military security standards.[5] Therefore, while NeSmith was a military member of the Georgia Air National Guard otherwise eligible for continued employment under 32 U.S.C. §§ 709(e)(1) and (2), he had a protected property[6] interest in his civilian technician employment that could not be denied absent a justified finding of "cause" for removal following a due process hearing. *See Tennessee v. Dunlap, supra,* 426 U.S. at 316, 96 S.Ct. at 2101 (property interest created by 32 U.S.C. § 709(e)(3) in continued employment absent "cause" for removal during guardsman's term of enlistment); *Arnett v. Kennedy,* 416 U.S. 134, 151–156, 94 S.Ct. 1633, 1643–45, 40 L.Ed.2d 15 (1974); *Perry*

*v. Sindermann,* 408 U.S. 593, 599–601, 92 S.Ct. 2694, 2698–2700, 33 L.Ed.2d 723 (1972); *Davis v. Vandiver,* 494 F.2d 830, 832–33 (5th Cir. 1974). NeSmith's claim that he was terminated for arbitrary and capricious reasons rather than for cause thus states a claim under 42 U.S.C. § 1983 if the defendants acted under color of state law in cancelling his civilian technician employment.

■ We find that the state action requirement for a § 1983 cause of action is met in this case. As previously discussed, the defendant Adjutant General of Georgia acts as a state officer as well as a federal agent in administering the civilian technician program. Indeed, the legislative history of the National Guard Technicians Act explicitly states that the Act provides for the exercise of the adjutant general's administrative authority over the technician program to remain "as a matter of law . . . at the State level." H.R.Rep.No. 1823, 90th Cong., 2nd Sess. (1968), 1968 U.S. Code Cong. & Admin.News, p. 3324. *See also id.* at 3319. Consequently, in removing NeSmith from his civilian technician position the defendant adjutant general and the other defendants, as his agents, acted sufficiently[7] under color of state law[8] for purposes of Section 1983.

---

Secretary concerned—(1) a technician who is employed in a position in which National Guard membership is required as a condition of employment and who is separated from the National Guard or ceases to hold the military grade specified for his position by the Secretary concerned shall be promptly separated from his technician employment by the Adjutant General of the jurisdiction concerned . . . ."

**4.** 32 U.S.C. § 709(e)(3) states:
"A technician may, at any time, be separated from his technician employment for cause by the adjutant general of the jurisdiction concerned . . . ."

**5.** 32 U.S.C. § 709(e)(2) states:
"A technician who is employed in a position in which National Guard membership is required as a condition of employment and who fails to meet the military security standards established by the Secretary concerned for a member of a reserve component of the armed force under his jurisdiction may be

separated from his employment as a technician and concurrently discharged from the National Guard by the adjutant general of the jurisdiction concerned . . . ."

**6.** No liberty interest of NeSmith was implicated in his termination from civilian technician employment. Although his dismissal was based on defamatory information, his liberty was not infringed by the mere presence of derogatory information in confidential files. A liberty interest is implicated only by the government's making public the stigmatizing charges in an official or intentional manner, which was not alleged to have occurred here. *See Walker v. Alexander,* 569 F.2d 291 (5th Cir. 1978); *Ortwein v. Mackey,* 511 F.2d 696, 699 (5th Cir. 1975) (construing *Sims v. Fox,* 505 F.2d 857, 864 (5th Cir. 1974) (en banc)).

**7.** The defendants also acted under color of federal law in removing NeSmith from his civilian technician job since the adjutant general's supervision of the civilian technician program of

**8.** See note 8 on p. 201.

Although NeSmith's contention with respect to his civilian technician dismissal does state a cause of action under 42 U.S.C. § 1983, we still must determine whether his complaint of illegal termination is reviewable by a federal court, or whether it involves internal military affairs not suitable for judicial oversight. Formally, a civilian technician is a federal civil employee outside the competitive civil service.[9] In substance, however, the position is one in a military organization. The technician is "an employee of the Department of the Army or the Department of the Air Force, as the case may be . . .." 39 U.S.C. § 709(d), engaged in such military enterprises as "(1) the administration and training of the National Guard; and (2) the maintenance and repair of supplies issued to the National Guard or the armed services." 32 U.S.C. § 709(a)(1) and (2). Moreover, one of the express purposes of the National Guard Technicians Act was to "recognize the *military characteristics* of the National Guard" by requiring civilian technicians to be military members of the National Guard and by providing for their supervision by the adjutants general pursuant to regulations prescribed by the secretary of the relevant military department. H.R.Rep. No. 1823, 90th Cong., 2nd Sess. (1968), 1968 U.S.Code Cong. & Admin.News, p. 3319.

NeSmith's challenge to the decision to terminate him as a civilian technician thus involves an internal military matter and implicates judicial concern over inappropriate intrusion into such transactions. We therefore must apply the four-pronged test established in *Mindes v. Seaman,* 453 F.2d 197, 201 (5th Cir. 1971), for determining whether a contested internal military decision should be subjected to judicial review.

*Mindes v. Seaman* requires a court contemplating review of an internal military determination first to determine whether the case involves an alleged violation of a constitutional right, applicable statute, or regulation, and whether intraservice remedies have been exhausted. If so, the court is then to weigh the nature and strength of the challenge to the military determination, the potential injury to the plaintiff if review is refused, the type and degree of anticipated interference with the military function, and the extent to which military discretion or expertise is involved in the challenged decision. 453 F.2d at 201–202.

NeSmith's challenge to his civilian technician dismissal satisfies the threshold *Mindes* requirements. He alleges that his constitutional due process rights were violated, and no contention has been raised that NeSmith's intraservice appeal from the removal decision did not exhaust the remedies made available to him by the National Guard. However, consideration of the nature and strength of NeSmith's due process claim weighs against judicial review. *Mindes* cautions that not all constitutional claims are to be weighed equally. 453 F.2d at 201. And while courts have granted review when the constitutional challenge was founded on infringement of specific

---

the Georgia Air National Guard is significantly governed by comprehensive regulations issued by the Secretary of the Air Force and by the directives contained in federal statute 32 U.S.C. § 709.

**8.** See *Scheuer v. Rhodes,* 416 U.S. 232, 243, 94 S.Ct. 1683, 1689, 40 L.Ed.2d 90 (1974) (quoting *United States v. Classic,* 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941), (state action for purposes of 42 U.S.C. § 1983 is the "misuse of power, possessed by virtue of state law and made possible . . . because the wrongdoer is clothed with the authority of state law . . . .."

**9.** Federal employee status was authorized for civilian technicians in order "(a) to provide a retirement and fringe benefit program which will be both uniform and adequate; (b) to recognize the military requirements and the State characteristics of the National Guard by providing for certain statutory administrative authority at the State level with respect to the technician program; (c) to clarify the technician's legal status which in certain areas has been the subject of conflicting court decisions, especially on the matter of whether technicians are covered under the Federal Tort Claims Act regarding third part actions against the United States government." H.R.Rep. No. 1823, 90th Cong., 2nd Sess. (1968), 1968 U.S.Code Cong. & Admin.News, p. 3319.

constitutional rights, such as the Fifth Amendment privilege against self-incrimination or the First Amendment freedoms of speech and press, they have denied review when the constitutional claim was that a serviceman's due process rights were violated by arbitrary and capricious official action.[10] Thus, NeSmith's due process claim with respect to his civilian technician dismissal is not the sort of allegation of constitutional deprivation that generally supports judicial review of internal military matters.

Moreover, the potential concrete injury to NeSmith if judicial review of his dismissal is denied also fails to justify the intervention of this court. Whether or not his dismissal was proper, NeSmith was legally entitled to his technician's employment only while militarily enlisted in the National Guard. He would have been severed automatically as a technician on October 22, 1976, one week after his dismissal, when his term of enlistment expired, and thus at most was unlawfully deprived of only one week's work. The harm inflicted on Ne-Smith by dismissal is certainly no greater than that at issue in *Reaves v. Ainsworth, supra* (plaintiff sought relief from decision discharging him from army), or *Turner v. Egan,* 358 F.Supp. 560, 562 (D.Alas.), aff'd, 414 U.S. 1105, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973) (plaintiffs sought relief from forced retirement from National Guard), both of which denied judicial review of the contested internal military matters.

Applying the third *Mindes* factor, we find that the degree of anticipated interference with the military function from granting judicial review of termination for cause would not be "such as to seriously impede the military in the performance of vital duties," 453 F.2d at 201, and by itself would not militate strongly against relief. Although judicial review of the challenged decisions would of course interfere to some degree with military function "[i]nterference per se is insufficient [as a ground for denying review] since there will always be some interference when review is granted," *id.* The degree of interference with the

---

10. For example, *Orloff v. Willoughby,* 345 U.S. 83, 89–92, 73 S.Ct. 534, 538–539, 97 L.Ed. 842 (1953), granted judicial review of a case in which the plaintiff alleged in part that he had been denied a commission to which he was entitled because he had exercised his Fifth Amendment right against self-incrimination by refusing to provide information as to his membership in or association with certain organizations designated by the Attorney General as subversive. Similarly, in *United States v. Flower,* 452 F.2d 80 (5th Cir. 1971), judicial review was accorded a First Amendment challenge to an installation commander's order restricting dissemination of publications at his army base. It is true that the *Flower* opinion, in upholding the contested regulation, broadly declared that

> We do not infer that the commander has unfettered discretion under this regulation. We hold only that within certain limits, the military establishment has authority to restrict the distribution of printed materials. This right to restrict distribution must be kept within reasonable bounds and courts may determine whether there is a reasonable basis for the restriction. . . . *Whether the post commander acts arbitrarily or capriciously, without proper justification, is a question which the courts are always open to decide.* . . .

*Id.* at 86 (citations omitted and emphasis supplied). However, the declaration that courts would review military action to test 'for arbitrariness must be read restrictively, in light of the First Amendment context in which it was made.

In contrast, the plaintiff in *Orloff, supra,* raised a second claim, protesting that he had not been assigned duties befitting his civilian status as a medical doctor, in contradiction of the Universal Military Training and Service Act, 50 U.S.C. Appendix § 454(i)(1)(A), which authorized his conscription as a medical specialist. In the absence of a claim that the doctor's duty assignments were based on his exercise of a particular constitutional right or were based on discrimination against such factors as his race, creed, color, or religion, the Supreme Court declared that the judiciary should not review a charge of unfairness or bias in the handling of duty assignments for military personnel. 345 U.S. at 93–94, 73 S.Ct. at 539–540. And in *Reaves v. Ainsworth,* 219 U.S. 296, 306–07, 31 S.Ct. 230, 233–34, 55 L.Ed. 225 (1911), review was denied a challenge to an Army discharge that, like that raised by Ne-Smith in the present case, alleged that the dischargee had been denied due process on the ground that the military authorities had exercised their jurisdiction arbitrarily and capriciously with the "wicked and corrupt" aim of removing him from duty. 219 U.S. at 302, 31 S.Ct. at 232.

National Guard in the present case posed by additional judicial hearings would be minimal since 32 U.S.C. § 709(e)(5)[11] already provides for internal review through the military hierarchy to the level of the adjutant general. In addition, judicial review would not appreciably interfere with military function because it entails no requirement that the plaintiff continue his employment pending review. *Cf. Arnette v. Kennedy,* 416 U.S. 134, 193–94, 94 S.Ct. 1633, 1663–64, 40 L.Ed.2d 15 (1974) (White, J., concurring in part and dissenting in part).

In contrast, consideration of the extent to which the exercise of military expertise or discretion is involved in the decision to discharge NeSmith from his civilian technician post counsels against according judicial review of his claim. The same great degree of military discretion is entailed in deciding whether to remove an employee "for cause" as is involved in such matters as "promotions or orders directly related to specific military functions" that *Mindes* expressly found were improper subjects for judicial review. 453 F.2d at 201–202. Weighing all of the relevant *Mindes* criteria, we find that NeSmith's challenge to his dismissal as an Air National Guard technician is not reviewable by this court, and that NeSmith's challenge to the military determination was properly dismissed.

 NeSmith also contests the denial of his reenlistment as a military member of the Georgia Air National Guard. He asserts that he has a property interest in reenlistment based on a "mutually explicit understanding" that reenlistment was automatic absent an adverse rating during the previous enlistment. *See Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). However, during his last enlistment period, NeSmith was, after internal review of the charges against him, suspended for unsatisfactory performance based on disorderly conduct. Thus, he did not have an entitlement to reenlistment even if existing rules or practices would otherwise have accorded him such a property interest.

In any event, NeSmith failed to introduce any evidence in response to the defendants' motion to dismiss that could establish the existence of an objective basis for finding an entitlement to reenlistment absent an adverse performance rating. He thereby failed to meet his evidentiary burden in establishing his due process claim with respect to reenlistment. *Cf. Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142 (1970) ("If respondent had met its initial burden by, for example, submitting affidavits . . Rule 56(e) would then have required petitioner to have done more than simply rely on the contrary allegations in her complaint . . ."). We therefore find that the order of the district court dismissing NeSmith's challenge to the denial of his reenlistment was correct.

For the above reasons, the district court's order is AFFIRMED.

---

11. 32 U.S.C. § 709(e)(5) states:

"A right of appeal which may exist with respect to clause 1, 2, 3, or 4 shall not extend beyond the Adjutant General of the jurisdiction concerned . . . . ."