Irene LINDENAU, Plaintiff-Appellant,

v.

Clifford ALEXANDER, et al.,
Defendants-Appellees.

No. 80–1066.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted May 14, 1981.

Decided Oct. 28, 1981.

Ann Yalman, Santa Fe, N. M., for plaintiff-appellant.

Captain Richard D. Rosen, Litigation Div., Dept. of the Army, Washington, D.C. (John W. Matthews, Litigation Div., Dept. of the Army, Washington, D.C., on the brief, Ronald F. Ross, Asst. U. S. Atty., D.N.M., Albuquerque, N.M., Colonel Arnold I. Melnick, and Major M. Scott Magers, Litigation Div., Washington, D.C., of counsel), for federal defendants-appellees.

Reginald J. Storment, Asst. Atty. Gen., State of N.M., Santa Fe, N.M. (Jeff Bingaman, Atty. Gen. and Vernon O. M. Henning, Asst. Atty. Gen., Santa Fe, N.M., on the brief), for state defendants-appellees.

Before SETH, Chief Judge, and HOLLO-WAY and McKAY, Circuit Judges.

SETH, Chief Judge.

Plaintiff-appellant Irene Lindenau enlisted in the New Mexico Army National Guard on September 10, 1976. She previously served in the United States Navy. At the time appellant enlisted in the National Guard she was a divorced mother with custody of her two minor children. She arranged for child care with her parents while she trained and served with the National Guard. However, at the time of appellant's enlistment the Army National Guard had a regulation, AR–601–210, which provided in pertinent part:

"(2) An applicant without a spouse and with one or more dependents under 18 years of age is disqualified, except as provided in (3) and (4) below. No waiver is authorized.

"(3) A divorced applicant *may be processed* for enlistment when the child or children have been placed in the custody of the *other parent* by court order and the applicant is not required to provide child support. *No waiver is required.*

"(4) A divorced applicant *may be processed* for dependency waiver when the child or children have been placed in the custody of the *other parent* by court order and the applicant *is required* to provide child support." (Emphasis in original.)

By reason of this regulation plaintiff Lindenau should not have been enlisted. She applied for a waiver of AR–601–210, but the request was denied because it did not comply with the waiver provisions of the regulation set out above. Subsequently appellant was administratively discharged with an honorable discharge.

Appellant filed this action against the federal and state defendants soon after her discharge. In her complaint she challenged the constitutionality of AR–601–210 as violating the Fifth Amendment of the Constitution on the grounds that it discriminated against her solely because of her status as an unmarried parent of minor children, and against all women because it adversely affects more women than men. She also charged that the regulation penalized her for exercising her freedom to choose in matters of marriage and family life, freedoms secured by the Constitution.

The defendants filed a motion to dismiss, and in the alternative for summary judgment. Appellant sought to initiate discovery, but defendants moved for a protective order which was entered. After a hearing motion for summary judgment was granted. On appeal Irene Lindenau attacks this summary judgment as improvidently granted in that she was denied a chance for discovery relevant to her constitutional claim; further, it was inappropriate because there existed issues of motive and intent, and she claims the trial court erred in concluding that her administrative discharge was not justiciable.

Traditionally the courts have been reluctant to intervene in or review military affairs, particularly those dealing with military discretion. In *Schlesinger v. Ballard,* 419 U.S. 498, 510, 95 S.Ct. 572, 578, 42 L.Ed.2d 610, the Supreme Court stated:

"This court has recognized that 'it is the primary business of armies and navies to fight or be ready to fight wars should the occasion arise.' *Toth v. Quarles,* 350 U.S. 11, 17 [76 S.Ct. 1, 5, 100 L.Ed. 8]. See also *Orloff v. Willoughby,* 345 U.S. 83, 94 [73 S.Ct. 534, 540, 97 L.Ed. 842]. The responsibility for determining how best our Armed Forces shall attend to that business rests with Congress, see U.S. Const., Art. I, § 8, cls. 12–14, and with the President. See U.S.Const., Art. II, § 2, cl. 1."

In *Orloff v. Willoughby,* 345 U.S. 83, 94, 73 S.Ct. 534, 540, 97 L.Ed. 842, Justice Jackson wrote:

"The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters."

In *Gilligan v. Morgan*, 413 U.S. 1, 10, 93 S.Ct. 2440, 2445, 37 L.Ed.2d 407, the plaintiffs sought an order requiring the federal courts to review military decisions relating to training, weaponry, and operations of the Ohio National Guard. The Supreme Court concluded there was no justiciable controversy. Chief Justice Burger, writing for the majority, stated:

"[I]t is difficult to conceive of an area of governmental activity in which the courts have less competence. The complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments, subject *always* to civilian control of the Legislative and Executive Branches." (Emphasis in original.)

We recognized in *Schulke v. United States*, 544 F.2d 453, 455 (10th Cir.), that "[t]he role of the federal judiciary with respect to the internal affairs of the military is narrow and restricted." We made a similar statement in *Noyd v. McNamara*, 378 F.2d 538, 540 (10th Cir.):

"Military regulations must be considered in the light of military exigencies, 'must be geared to meet the imperative needs of mobilization and national vigilance—when there is no time for "litigious interruption" ' and great and wide discretion exists in the executive department both in the formation and application of regulations and in their interpretation in such matters as what constitutes 'for the good of the service.' "

The case concerned the question as to whether a pre-enlistment contract had been complied with and the issue was examined and decided. This is not to say there are no areas with precedent for judicial review of matters in the military establishment. After all, "members of the military community enjoy many of the same rights and bear many of the same burdens as do members of the civilian community." *Parker v. Levy*, 417 U.S. 733, 751, 94 S.Ct. 2547, 2559, 41 L.Ed.2d 439.

In *Mindes v. Seaman*, 453 F.2d 197, the Fifth Circuit considered the scope of review federal courts should have in military matters. That court found that federal courts may "review matters of internal military affairs to determine if an official has acted outside the scope of his powers," 453 F.2d, at 199, citing *Harmon v. Brucker*, 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503. Also, actions against military officials for violating their own regulations are reviewable or justiciable, as are cases questioning the constitutionality of statutes relating to the military, executive orders, and regulations. "Court-martial convictions alleged to involve errors of constitutional proportions have consistently been held to be subject to court review," and "[s]elective service induction procedures present another area with clear precedent for judicial review . . . ." 453 F.2d, at 201.

In this appeal neither party disputes that there is subject matter jurisdiction. The question is whether Irene Lindenau's claims "presented and the relief sought are of the type which admit of judicial resolution." *Powell v. McCormack*, 395 U.S. 486, 517, 89 S.Ct. 1944, 1961, 23 L.Ed.2d 491.

In *NeSmith v. Fulton*, 615 F.2d 196, 201, the Fifth Circuit summarized its position by saying:

"*Mindes v. Seaman* requires a court contemplating review of an internal military determination first to determine whether the case involves an alleged violation of a constitutional right, applicable statute, or regulation, and whether intra-service remedies have been exhausted. If so, the court is then to weigh the nature and strength of the challenge to the military determination, the potential injury to the plaintiff if review is refused, the type and degree of anticipated interference with the military function, and the extent to which military discretion or expertise is involved in the challenged decision."

The court in *West v. Brown*, 558 F.2d 757 (5th Cir.), considered a case quite similar to the one before this court. There, appellant West was an unwed mother of a minor who met all the necessary requirements for enlistment in the National Guard. The court there found plaintiff's challenge to an earli-

er form of AR–610–210 to be nonreviewable. Other jurisdictions have accepted the Fifth Circuit's analysis to determine the reviewability of military matters. *See Schlanger v. United States*, 586 F.2d 667 (9th Cir.), *Doe v. Alexander*, 510 F.Supp. 900 (D.Minn.), *Turner v. Egan*, 358 F.Supp. 560 (D.Alaska), *aff'd*, 414 U.S. 1105, 94 S.Ct. 831, 38 L.Ed.2d 733, and others.

The Third Circuit in a significant decision in *Dillard v. Brown*, 652 F.2d 316, declined to adopt the position of the Fifth Circuit and reviewed plaintiff's claim directed to an Army regulation.

There is no guidance from the Supreme Court on how to proceed in determining how far the judiciary should inquire into military matters. The trial court in the case *sub judice* relied on the reasoned approach in *Mindes* as applied in *West v. Brown*, in granting summary judgment against Irene Lindenau. The court concluded that her alleged constitutional deprivations were not strong, and that the regulation was facially neutral and had a strong historic and rational basis. Further the trial court found that she was only being denied the privilege of enlisting, and that the remedy sought would unduly invade the decision making entrusted to the military, and if granted could result in a flood of litigation attacking all enlistment regulations and criteria.

 Appellant did meet the first part of the *Mindes* test in that she did allege a violation of her constitutional rights. But as the trial court concluded, appellant's challenge to AR–601–210 was not particularly strong. The only affirmative action by the National Guard has been to deny appellant enlistment. Appellant is specifically not attacking her discharge, but only the non-waivable regulation which does not permit single parents of minors to enlist. It is well established that there is no right to enlist in this country's armed services. *Crawford v. Cushman*, 531 F.2d 1114 (2d Cir.). As the appellees urge and as the Fifth Circuit noted in *West v. Brown*, 558 F.2d, at 760, the reasoning in *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d

522, that "rational restrictions on noncontractual government benefits and services are valid in the absence of affirmative government action which curtails important constitutional liberties, since such benefits do not in themselves enjoy constitutionally protected status," is appropriate and controlling here.

 Appellant has not shown that single parents of minors constitute a suspect class. On the other hand, the government has shown that there is a rational reason for the implementation of the regulation. From July 1973 to July 1974 single applicants with minor children were allowed to enlist if they obtained a waiver. This record contains an affidavit of Major General Paul S. Williams, Jr., who at the time was Director of Personnel Management, Office of the Deputy Chief of Staff for Personnel, Department of the Army. In his affidavit Major General Williams pointed out why the present AR–601–210 was implemented:

"During the period July 1973—July 1974, there was a significant increase in the enlistment of single applicants with minor children. Also, during this period, sole parents presented many problems in other personnel management areas. These soldiers were unable, many times, to perform during normal duty hours because of the requirement to care for the children; some were not available for extra duty requirements in the evening, weekend, and other odd duty-hour requirements. Special considerations were required during extended and unannounced training exercises, to avoid the children suffering from lack of proper care and supervision. Overall, this category of soldiers was requiring an inordinate amount of management time and presented morale problems because of the inconsistency in unit policies regarding duty and other requirements. Of paramount importance, this category of soldiers was not providing the assignment flexibility required to manage a military force on a worldwide basis and caused inequities in the Army assignment policies.

"During the period July 1973—July 1974, the problems associated with single applicants with minor children were highlighted. Even though enlistees had made arrangements for the care of the children prior to their enlistment, these arrangements, many times, were temporary and did not relieve them from the care of the children. Consequently, soldiers were arriving at their first duty stations not prepared to provide the proper care and supervision of the children and perform their military duties. This situation created morale problems within the units."

AR–602–210 was based on military needs and the experience of permitting single parents of minors to enlist. The qualifications for entry into the armed forces is a matter for Congress to determine. Congress had delegated by statute the implementation of this control to the Secretary of the Army (10 U.S.C. (§§ 505(a) and 510(b)). *See Brown v. Glines*, 444 U.S. 348, 100 S.Ct. 594, 62 L.Ed.2d 540. The composition of the armed forces is a matter for Congress and the military. *Gilligan v. Morgan*, 413 U.S. 1, 93 S.Ct. 2440, 37 L.Ed.2d 407.

Appellant Lindenau claims that the regulation penalized her for exercising her freedom to choose in matters of marriage and family life. This is the claim asserted in *West v. Brown*, which the Fifth Circuit found to be tenuous, and we agree. The regulation, in light of the uncontroverted affidavit of Major General Williams, "does not affirmatively curtail marriage or child bearing," *West v. Brown*, 558 F.2d, at 760, but instead insures that National Guard personnel can rapidly respond to national defense requirements and fulfill their duties within the military community.

Appellant's last constitutional claim is that the regulation discriminates against women because it adversely affects more women than men. It is not disputed that AR–601–210 is facially neutral. In *Washington v. Davis*, 426 U.S. 229, 242, 96 S.Ct. 2040, 2048, 48 L.Ed.2d 597, the Supreme Court stated, "we have not held that a law, neutral on its face and serving ends otherwise within the power of government to pursue, is invalid under the Equal Protection Clause simply because it may affect a greater proportion of one race [or sex] than of another." More recently in *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870, the Supreme Court found a Massachusetts statute to be constitutional which gives veterans an absolute lifetime preference in public employment opportunities, even though it has a greater disproportionate negative effect on women. Over 98% of veterans were men at the time the litigation commenced, which of course had a "severe" impact on the public employment opportunities of women.

The Court in *Feeney*, 442 U.S., at 274, 99 S.Ct., at 2293, provided a framework for analysis in constitutional challenges as appellant here asserts:

"When a statute gender-neutral on its face is challenged on the ground that its effects upon women are disproportionably adverse, a twofold inquiry is thus appropriate. The first question is whether the statutory classification is indeed neutral in the sense that it is not gender based. If the classification itself, covert or overt, is not based upon gender, the second question is whether the adverse effect reflects invidious gender-based discrimination. See *Arlington Heights v. Metropolitan Housing Dev. Corp.* [, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450]. In this second inquiry, impact provides an 'important starting point,' 429 U.S., at 266 [97 S.Ct. at 563], but purposeful discrimination is 'the condition that offends the Constitution.' *Swann v. Charlotte-Mecklenburg Board of Education*, 402 U.S. 1, 16 [91 S.Ct. 1267, 1276, 28 L.Ed.2d 554]."

Purposeful discrimination, the Court explained, 442 U.S., at 279, 99 S.Ct., at 2296:

"implies more than intent as volition or intent as awareness of consequences. See *United Jewish Organizations v. Carey*, 430 U.S. 144, 179 [97 S.Ct. 996, 1016, 51 L.Ed.2d 229] (concurring opinion). It implies that the decisionmaker, in this case a state legislature, selected or reaf-

firmed a particular course of action at least in part 'because of' not merely 'in spite of,' its adverse effects upon an identifiable group."

Nothing in this record demonstrates that this regulation was devised and enacted to keep women out of the National Guard. Instead what we do have, as stated in Major General Williams' affidavit, is a policy "proven to be in the best interest of the Army," in that "[t]he Army must continue to evaluate personnel policies and insure only individuals who are available for assignment at any location in the world are enlisted and retained." As the Supreme Court in *Feeney* concluded that women were excluded from employment because they were non-veterans, not because they were women, so here women single parents with minor children are excluded because they are single parents with minor children, not because they are women.

So although the appellant does assert constitutional claims here, none are particularly strong. In accordance with *Mindes* we must also look at and weigh the other three factors with appellant's constitutional claims to determine whether the trial court was correct in denying review and granting summary judgment. This is a determination as to whether there is a justiciable case. The potential injury to appellant is that she loses the opportunity to enlist in the National Guard while she has minor children, and any benefits that go along with enlistment. The comparisons are not unusual in deciding justiciability. But as we have already stated, there is no right to enlist.

The last two factors, the type of interference and the military experience and discretion involved, "present a single inquiry, focusing on disruption of military functions and distortion of factors such as troop morale which are important to the operation of the military." *West v. Brown*, 558 F.2d, at 760. It is clear from Major General Williams' affidavit that the Army has experimented in this area and this regulation is what the Army concluded is necessary for the best interest of the armed forces. We agree that "our review would entail a sizeable leap into an area in which the only compass is accumulated military experience." *West v. Brown*, 558 F.2d, at 761. *See again* the statement in *Noyd v. McNamara*, 378 F.2d 538, 540, quoted above.

■ Appellant has one further contention. She claims the trial court erred by denying her the opportunity for discovery of facts relevant to her claim. Primarily appellant desired more discovery to establish her theory that this regulation had a disproportionate adverse impact on women because more women had custody of minor children than did men. However, appellant could have established her theory with generally available data, such data apparently already existing in the trial court file. Also, as we noted above, the fact that more women than men are excluded from the National Guard because of AR–601–210 would not have been enough to mandate judicial review. As stated in *Brennan v. Local U. No. 639, Int. Bro. of Teamsters, etc.*, 494 F.2d 1092, 1100 (D.C.Cir.):

"Trial courts, as indicated by the Advisory Committee's Notes to Federal Rule of Civil Procedure 26(b), have broad powers to regulate or prevent discovery and such powers have always been freely exercised."

The trial court acted within its discretion on the discovery issue. Appellant was not prejudiced by the stay order entered in this action.

We affirm the summary judgment granted to the government defendants by the trial court.

McKAY, Circuit Judge, concurring:

While I concur in the court's disposition of this case, I do so with some qualification. The majority here adopts the position of the Fifth Circuit in *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971), as to the tests applicable in cases such as this one. This Fifth Circuit position was developed prior to the decision of the United States Supreme Court in *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979), and, in my view, is no

longer tenable. I believe the correct analysis is that posited by the Third Circuit in *Dillard v. Brown*, 652 F.2d 316 (3rd Cir. 1981), subsequent to *Feeney*. However, I do not believe that the plaintiff in this case has adequately alleged the kind of discriminatory intent required in any event. Therefore, I concur in the judgment affirming dismissal of her action.